IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 98-cv-1072-RPM

MEDTRONIC NAVIGATION, INC.,
MEDTRONIC SOFAMOR DANEK, INC.,
SOFAMOR DANEK HOLDINGS, INC. and
ST. LOUIS UNIVERSITY,

        Plaintiffs,

v.

BRAINLAB MEDIZINISCHE COMPUTERSYSTEMS GMBH,
BRAINLAB AG, a German corporation,
BRAINLAB USA, INC., a Delaware corporation, and
BRAINLAB, INC., a Delaware corporation

        Defendants.

---

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
ON DEFENDANTS' UNFAIR COMPETITION COUNTERCLAIM

---

The defendants (collectively, "BrainLAB") allege in their eighth counterclaim:

> Plaintiffs have competed unfairly through various improper activities including bringing suit on a patent knowing that it is not infringed by the defendants and that the said patent is invalid and/or unenforceable, using this suit as a marketing ploy, using this suit as a means to settle other conflicts between the parties and improperly characterizing this suit in conversations with customers and potential customers.

(Countercl. ¶ 20; Answer to Fourth Am. Compl). BrainLAB claims that the plaintiffs have engaged in unfair competition "under federal law, under the laws of the State of Colorado and under common law." (*Id.* ¶ 21).

In response to contention interrogatories served by the plaintiffs, BrainLAB identified two categories of allegedly anti-competitive conduct. First, BrainLAB asserted that the plaintiffs had actual knowledge that the Bucholz patents were invalid at the time the lawsuit was commenced, "making the institution and maintenance of this lawsuit an act of unfair competition." Second, BrainLAB asserted that "SNT[1] routinely ties the pricing of StealthStation products and related items to the sales of other products made and sold by the 'Medtronic Family' of companies," and that such tying "may be a violation of 42 U.S.C. § 1320a-7b(b) . . . ."

The plaintiffs moved for summary judgment, arguing that neither the alleged fraudulent procurement of the Bucholz patents, nor the alleged "bundling" supports a claim for unfair competition under state or federal law. In its opposition brief, BrainLAB identified three bases for its unfair competition counterclaim: (1) § 2 of the Sherman Act; (2) § 43(a) of the Lanham Act, and (3) the Colorado Unfair Practices Act, specifically C.R.S. § 6-2-108 and § 6-2-111.

*The Sherman Act, § 2.* In *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965), the United States Supreme Court held that "enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." BrainLAB has alleged that during the patent application process Dr. Richard Bucholz of St. Louis University misrepresented his inventorship of the '454 and '183 patents by failing to disclose to the Patent Office that Dr. Waldean Schulz

---

[1] Surgical Navigation Technologies, Inc. ("SNT") is now known as Medtronic Navigation, Inc. Medtronic Navigation, Inc. has been substituted for SNT as a plaintiff in this action.

was a co-inventor. BrainLAB's affirmative defense of inequitable conduct is premised on its contention that this omission renders the Bucholz patents unenforceable. (Answer to Fourth Am. Compl. ¶¶ 67-68). BrainLAB now asserts that the plaintiffs have violated § 2 of the Sherman Act by bringing suit on the Bucholz patents, knowing these patents are unenforceable. BrainLAB's position is that its unfair competition claim encompasses a *Walker Process* antitrust claim.

BrainLAB never pleaded a claim arising under § 2 of the Sherman Act, and it did not reveal during discovery that it was pursuing a *Walker Process* antitrust claim. BrainLAB's effort to include a claim under § 2 of the Sherman Act within its claim for unfair competition is untimely.

*The Lanham Act.* BrainLAB next argues that the plaintiffs have engaged in unfair competition prohibited under the Lanham Act by bringing suit on the allegedly unenforceable Bucholz patents, and by using the Bucholz patents as a marketing tool.

Section 43(a) of the Lanham Act provides:

**(1)** Any person who, on or in connection with any goods or services, or any container
for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Enforcement of a patent alleged to have been obtained through inequitable conduct in the Patent Office does not give rise to a claim under the Lanham Act. *Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1575 (Fed. Cir. 1996). Marketplace communications by a patentee concerning its patent may be actionable under the Lanham Act where the marketplace conduct is undertaken in bad faith. *Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999).

BrainLAB has submitted four documents that it contends are evidence of misleading market-directed statements made by SNT. One is an article from the St. Louis Business Journal dated February 12, 2004. (Defs.' opp'n br., Ex. D). This article quotes SNT's counsel as stating that Dr. Bucholz's invention made neurosurgery "much more accurate than it was 10 years ago." The second document is a press release issued by St. Louis University on March 10, 2003. (Ex. E). This press release states that "Bucholz's earlier patented image guided surgical tool, the StealthStation, registers objects that don't move in relation to each other – the skull and the brain – and gives the physicians control of precise movements during surgery." The third document is an article from the St. Louis Business Journal dated February 15, 2002, describing SNT's StealthStation as the brain mapping device invented and patented by Dr. Bucholz. (Ex.

F).  The fourth document is a selection from the User Manual for the StealthStation's Spine Software.  (Ex. H).  The manual refers to the spine application as including the patented Bucholz concept of providing free-hand localization and dynamic referencing.  BrainLAB characterizes these documents as showing that SNT has used the Bucholz patents as a marketing tool, knowing that the Bucholz patents were fraudulently procured.

The evidence submitted by BrainLAB is not sufficient to support a Lanham Act claim.  In *Zenith*, the alleged wrongful acts of the patentee were statements to customers that a competitor's products infringed its patents and representations that its patents could not be designed around.  There is no evidence of conduct of that nature by the patentee in this case.  BrainLAB has not submitted any evidence showing that SNT disparaged BrainLAB's products through marketplace communications.  There is no evidence that SNT represented itself to be the exclusive source of image guided surgery equipment. BrainLAB emphasizes Exhibit E, the press release dated March 10, 2003, in which Dr. Bucholz is quoted as saying, "Almost no one does intracranial surgery without image guidance now."  Contrary to BrainLAB's contention, this press release does not imply that SNT is the exclusive source of image guided surgery equipment.  Moreover, BrainLAB has not shown that the purportedly misleading statements were likely to cause confusion among consumers or influence purchasing decisions.

*The Colorado Unfair Practices Act*.  The other prong of BrainLAB's unfair competition claim involves an alleged bundling scheme by two Medtronic entities, SNT and Medtronic

Sofamor Danek. BrainLAB does not assert that these entities engaged in any tying arrangements prohibited by antitrust law, but it contends that the alleged bundling violated the federal Anti-Kickback statute, 42 U.S.C. § 1320a-7b. Subsection (b)(2)(b) of that statute makes it a criminal offense to offer any compensation to induce any person to purchase any good for which payment may be made under a Federal health care program.

The Anti-Kickback statute is a criminal statute and does not provide a private right of action. BrainLAB apparently concedes this point, arguing instead that SNT's bundling activities violated the following provision of the Colorado Unfair Practices Act:

> The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is an unfair trade practice.

C.R.S. § 6-2-108. A private right of action is provided in C.R.S. § 6-2-111(1):

> Any person, firm, private corporation, municipal corporation, public corporation, or trade association may maintain an action to enjoin a continuance of any act in violation of sections 6-2-103 to 6-2-108 or section 6-2-110 and, if injured thereby, for the recovery of damages. If, in such action, the court finds that the defendant is violating or has violated any of the provisions of sections 6-2-103 to 6-2-108 or section 6-2- 110, it shall enjoin the defendant from a continuance of the violations. It shall not be necessary that actual damages to the plaintiff be alleged or proved. In addition to such injunctive relief, the plaintiff in said action shall be entitled to recover from the defendant three times the amount of the actual damages, if any, sustained.

BrainLAB argues that its counterclaim for unfair competition encompasses a claim under these Colorado statutes.

BrainLAB's claim under the Colorado Unfair Practices Act is untimely. BrainLAB did not specifically plead this statutory claim. In its response to the plaintiffs' contention interrogatories BrainLAB did not identify these statutes as providing a basis for its unfair competition counterclaim. At this stage, BrainLAB cannot assert a claim under the Colorado Unfair Practice Act under the broad label of unfair competition.

In addition, an element of a claim under C.R.S. § 6-2-108 is *injury of a competitor*, and BrainLAB has provided no evidence showing that it was injured as a result of the alleged bundling activities. BrainLAB merely asserts that the offering of illegal and secret discounts harms competition generally. BrainLAB's claim under the Colorado Unfair Practices Act fails for this reason as well.

Based on the foregoing, it is

ORDERED that the plaintiffs' motion for summary judgment dismissing defendants'

unfair competition counterclaim is granted; it is

FURTHER ORDERED that the plaintiffs' unopposed motion filed February 18, 2005, for permission to file under seal Appendices 3-10 to their memorandum in support of plaintiffs' motion for summary judgment on defendants' counterclaim for unfair competition is granted.

Dated:   July  14th , 2005

> BY THE COURT:
>
> s/Richard P. Matsch
>
> _____
>
> Richard P. Matsch, Senior District Judge