IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 98-CV-1072-RPM-OES

MEDTRONIC NAVIGATION, INC., f/k/a SURGICAL NAVIGATION TECHNOLOGIES,
INC., a Delaware corporation,
MEDTRONIC SOFAMOR DANEK, INC., an Indiana corporation,
SOFAMOR DANEK HOLDINGS, INC., a Delaware corporation,
ST. LOUIS UNIVERSITY, a Missouri corporation, and
TRUSTEES OF DARTMOUTH COLLEGE, a New Hampshire corporation.

Plaintiffs,
v.

BRAINLAB MEDIZINISHCHE COMPUTERSYSTEMS GMBH,
a German corporation,
BRAINLAB AG, a German corporation,
BRAINLAB USA, INC., a Delaware corporation, and
BRAINLAB, INC., a Delaware corporation

Defendants.

---

## FINAL PRETRIAL ORDER

---

### 1.    DATE AND APPEARANCES

The Final Pretrial Conference was held on August 19, 2005 at 2:30 PM.

Appearing on behalf of the Plaintiffs Medtronic Navigation, Inc., f/k/a, Surgical

Navigation Technologies, Inc., et al. (collectively, "SNT"):

| | | |
|---|---|---|
| James E. Hartley, Esq. | Terrence P. McMahon, Esq. | Daniel R. Foster, Esq. |
| Holland & Hart, LLP | Vera M. Elson, Esq. | Christopher D. Bright, Esq. |
| United States Dist. Ctr. Box 06 | McDermott Will & Emery | McDermott Will & Emery |
| 555 Seventeenth St. #3200 | 3150 Porter Drive | 18191 Von Karman Ave., |
| Denver, CO 80202 | Palo Alto, CA 94304 | Suite 400 |
| Phone: 303/295-8237 | Phone: 650/813-5000 | Irvine, CA 92614 |
| | | Phone: 949/851-0633 |

Appearing on behalf of the defendants, BrainLAB Medizinishche Computersystems

GMBH et al. ("BrainLAB"):

| | | |
|---|---|---|
| Thomas H. Shunk, Esq. | Jay R. Campbell, Esq. | Marc David Flink, Esq. |
| Baker & Hostetler | John J. Del Col, Esq. | Baker & Hostetler, Esq. |
| 1900 East 9th Street | Joshua M. Ryland, Esq. | District Court Box Number 17 |
| 3200 National City Center | Renner, Otto, Boisselle & | 303 East Seventeenth Ave. |
| Cleveland, OH 44114-3485 | Sklar, LLP | #1100 |
| Phone: 216/861-7592 | 1621 Euclid Ave., 19th Floor | Denver, CO 80203 |
| | Cleveland, OH 44115 | Phone: 303/764-4030 |
| | Phone: 216/621-1113 | |

## 2. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), 2201 and

2202, as this action arises under the patent laws, Title 35, U.S.C., and is an action for a

declaratory judgment.

Venue is proper in this Court.

## 3. CLAIMS AND DEFENSES

### A. SNT's Statement of its Claims

Plaintiffs Medtronic Navigation, Inc., f/k/a Surgical Navigation Technologies,

Inc., Medtronic Sofamor Danek, Inc., Sofamor Danek Holdings, Inc., St. Louis University, and

the Trustrees of Dartmouth College (collectively, "SNT") claim that BrainLAB Medizinishche

Computersystems GMBH, BrainLAB AG, BrainLAB USA, Inc., and BrainLAB, Inc.

(collectively, "BrainLAB") have infringed six of SNT's patents:  United States Patent Number

4,722,056 ("the Roberts '056 patent"); United States Patent Number 5,383,454 ("the Bucholz

'454 patent"); United States Patent Number 5,851,183 ("the Bucholz '183 patent"); United States

Patent Number 5,389,101 ("the Heilbrun '101 patent"); United States Patent Number 5,603,318

("the Heilbrun '318 patent"); and United States Patent Number 5,836,954 ("the Heilbrun '954

patent") (collectively, "the SNT patents" or "patents in suit").  SNT claims BrainLAB's image-guided surgical navigation and related products infringe these patents.

BrainLAB's systems infringe the Roberts and Bucholz patents under the Doctrine of Equivalents.  BrainLAB did not invent passive optical tracking.  Rather, BrainLAB buys its tracking devices off the shelf from third party vendors such as Qualisys and Northern Digital.  BrainLAB's passive optical tracking systems perform substantially the same function, substantially the same way, to achieve substantially the same result as the Roberts and Bucholz patents.  Therefore, BrainLAB's systems infringe the Roberts and Bucholz patents.

Further, BrainLAB's systems establish a workspace coordinate framework, a static or immovable coordinate system centered in the workspace that must be re-established if one or more of the cameras are moved.  BrainLAB's systems repeatedly re-establish a 3D coordinate framework in a medical workspace.

SNT claims it is entitled to damages, measured by lost profits and a reasonable royalty, in the amount of at least $144,018,614.

SNT further claims that BrainLAB has willfully infringed the patents in suit.  Even after obtaining notice of SNT's patents in suit, BrainLAB has continued to knowingly infringe the patents.  BrainLAB has no good faith belief that SNT's patents are either not infringed or invalid.

BrainLAB does not challenge the validity of the Roberts '056 patent.

BrainLAB does not contend that the Bucholz patents are rendered invalid by prior art.  BrainLAB's remaining challenge to the validity of the Bucholz patents is without basis in fact or law.  Waldean Shulz was not an inventor of the subject matter of the Bucholz patents.  He simply worked for a software vendor from which Dr. Bucholz purchased software.

SNT also claims it is entitled to prejudgment and postjudgment interest, an enhancement of damages for BrainLAB's willful infringement, attorneys' fees, costs, and an injunction.

**B.      BrainLAB's Statement of its Defenses and Counterclaims.**

BrainLAB denies that it infringes any of SNT's patents in suit.   BrainLAB's surgical navigation system, the VectorVision System, and its radiotherapy products, incorporate BrainLAB's revolutionary passive technology, and do not infringe the plaintiffs' patents, among other things, because the BrainLAB products do not rely on acoustic navigation, which the Court has said is required under the Bucholz and Roberts Patents, nor do they rely upon the creation of a static or immovable workspace coordinate framework, which the Court has said is required under the Heilbrun Patents.

BrainLAB also claims that the Bucholz patents asserted by SLU, U.S. Patent Nos. 5,383,454 ("the Bucholz '454 patent") and 5,851,183 (" the Bucholz '183 patent"), are *unenforceable* because the plaintiff SLU and the named inventor, Richard Bucholz, intentionally misrepresented the inventorship of both of these patents to the U.S. Patent Office by failing to name Waldean Schulz as an inventor.  BrainLAB claims that these same patents are *invalid* because the unnamed inventor, Dr. Schulz, knowingly participated in the misrepresentation in exchange for certain license rights under these patents.  BrainLAB claims that the Heilbrun patents, United States Patent Nos. 5,389,101 ("the Heilbrun '101 patent"); 5,603,318 ("the Heilbrun '318 patent); and 5,836,954 ("the Heilbrun '954 patent") are invalid as being anticipated and/or obvious over the prior art.

BrainLAB asserts that SNT's conduct in filing groundless litigation, in needlessly escalating the cost of the litigation by repeatedly amending the Complaint and asserting

additional patents that have nothing to do with BrainLAB's devices, and in unnecessarily

prolonging depositions has and is causing great harm to BrainLAB.  Consequently, BrainLAB

has countersued SNT for declaratory judgments of invalidity and unenforceability of the Bucholz

'454 patent and the Bucholz '183 patent and for invalidity of the Heilbrun '101, '318 and '954

patents.  BrainLAB believes that SNT's misconduct also renders this an "exceptional case"

entitling defendants to their attorney fees in defending this groundless action.

<strong>4.     STIPULATIONS</strong>

The parties stipulate to the facts, evidence, and applicability of statutes, regulations, rules,

ordinances, etc. as follows:

**A.     <u>Stipulated Facts</u>.**

1. Plaintiff Medtronic Navigation, Inc. is a corporation organized under the laws
   of the State of Delaware, with its principal business at 826 Coal Creek Circle,
   Louisville, Colorado.  Medtronic Navigation was named Surgical Navigation
   Technologies, Inc. until 2005.  Medtronic Navigation, and before that
   Surgical Navigation Technologies, have designed image-guided surgical
   navigation products.

2. Plaintiff Medtronic Sofamor Danek, Inc. is a corporation organized under the
   laws of the State of Indiana, with its principal place of business at 1800
   Pyramid Place in Memphis Tennessee.

3. Plaintiff Sofamor Danek Holdings, Inc. is a corporation organized under the
   laws of the State of Delaware, with its principal place of business at 1800
   Pyramid Place in Memphis Tennessee.  Sofamor Danek Holdings is a

wholly-owned subsidiary of Medtronic Sofamor Danek.

4.   Plaintiff St. Louis University is a not-for-profit corporation organized under the laws of the State of Missouri, with its principal place of business at 221 N. Grand Boulevard in St. Louis, Missouri.

5.   Plaintiff the Trustees of Dartmouth College is a not-for-profit organized under the laws of the State of New Hampshire, with its principal place of business at 7 Lebanon Street in Hanover, New Hampshire.

6.   Medtronic Navigation makes, offers to sell and sells in the United States, and exports from the United States, an image-guided surgical navigation system known as the StealthStation system.

7.   Defendant BrainLAB GmbH is a corporation organized and existing under the laws of Germany, with its principal place of business at Ammerthalstrasse 8, 85551 Heimmstetten, Kirchheim, Germany.

8.   Defendant BrainLAB AG is a corporation organized and existing under the laws of Germany, with its principal place of business at Ammerthalstrasse 8, 85551 Heimmstetten, Kirchheim, Germany.

9.   Defendant BrainLAB, USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 100 Marine Parkway, Suite 305 Redwood City, California 94065.

10.  Defendant BrainLAB, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 100 Marine Parkway, Suite 305 Redwood City, California.

11.   BrainLAB makes in Germany and imports into and uses, offers for sale, and
sells in Colorado and the United States image-guided surgical navigation and
related products, including the following products:

(a)   Microscope Integration along with any applications and platforms that
are capable of using Microscope Integration (*e.g.*, cranial, ENT, hip,
knee, spine, fluoro, VectorVision classic, VectorVision2, VectorVision
compact, VectorVision Sky, VectorVision Sky iMRI, BrainSUITE, and
Kolibri);

(b)   VectorVision Cranial application along with any platforms that are
capable of running this application (*e.g.*, VectorVision classic,
VectorVision2, VectorVision compact, VectorVision Sky,
BrainSUITE, and VectorVision Sky iMRI.);

(c)   VectorVision ENT application along with any platforms that are
capable of running this application (*e.g.*, VectorVision classic,
VectorVision2, VectorVision compact, VectorVision Sky,
BrainSUITE, and VectorVision Sky iMRI.);

(d)   VectorVision Spine application along with any platforms that are
capable of running this application (*e.g.*, VectorVision classic,
VectorVision2, VectorVision compact, VectorVision Sky,
BrainSUITE, and VectorVision Sky iMRI.);

(e)   VectorVision Knee application along with any platforms that are
capable of running this application (*e.g.*, VectorVision classic,

VectorVision2, VectorVision compact, VectorVision Sky, BrainSUITE, and VectorVision Sky iMRI.);

(f)     VectorVision Hip application along with any platforms that are capable of running this application (*e.g.*, VectorVision classic, VectorVision2, VectorVision compact, VectorVision Sky, BrainSUITE, and VectorVision Sky iMRI.);

(g)     Kolibri ENT and Kolibri cranial, including the Kolibri platform;

(h)     Ultrasound Integration along with any applications and platforms that are capable of using Ultrasound Integration (*e.g.*, cranial, ENT, hip, knee, spine, fluoro, VectorVision classic, VectorVision2, VectorVision compact, VectorVision Sky, VectorVision Sky iMRI, BrainSUITE, and Kolibri);

(i)     ExacTrac and/or Novalis (including Ultrasound Localization with ExacTrac & Novalis); and

(j)     accessories or components such as pointers, instrument adapters, instrument calibration matrix, reference array, reference clamp, and minimally invasive reference array (MIRA).

12.  On  January 26, 1988, United States Patent Number 4,722,056 (also referred to as "the Roberts '056 patent") issued, naming David W. Roberts, John W. Strohbehn, and John F. Hatch as inventors, who assigned all rights, title and interest in the Roberts '056 patent to the Trustees of Dartmouth College before the Roberts '056 patent issued.

13. BrainLAB does not challenge the validity of the Roberts '056 patent.

14. On January 24, 1995, United States Patent Number 5,383,454 issued, naming Richard D. Bucholz as inventor, who assigned all rights, title and interest in the Bucholz '454 patent to St. Louis University before the Bucholz '454 patent issued. A reexamination certificate for the Bucholz '454 patent issued on December 31, 1996.

15. On December 22, 1998, United States Patent Number 5,851,183 issued, naming Richard D. Bucholz as inventor, who assigned all rights, title and interest in the Bucholz '183 patent to St. Louis University before the Bucholz '183 patent issued.

16. On February 14, 1995, United States Patent Number 5,389,101 issued, naming Mark P. Heilbrun, Paul McDonald, J. Clayton Wiker, Spencer Koehler, and William Peters as inventors, who assigned the Heilbrun '101 patent to the University of Utah before the '101 patent issued.

17. On February 18, 1997, United States Patent Number 5,603,318 issued, naming Mark P. Heilbrun, Paul McDonald, J. Clayton Wiker, Spencer Koehler, and William Peters as inventors, who assigned the Heilbrun '318 patent to the University of Utah before the '318 patent issued.

18. On November 17, 1998, United States Patent Number 5,836,954 issued, naming Mark P. Heilbrun, Paul McDonald, J. Clayton Wiker, Spencer Koehler, and William Peters as inventors, who assigned the Heilbrun '954 patent to the University of Utah before the '954 patent issued.

19. BrainLAB had notice of the Roberts '056 patent by May 26, 1997.

20. BrainLAB had notice of the Bucholz '454 patent by August 1, 1995.

21. BrainLAB had notice of the Bucholz '183 patent by December 22, 1998.

22. BrainLAB had notice of the Heilbrun '101 patent by February 1, 1999.

23. BrainLAB had notice of the Heilbrun '954 patent by February 1, 1999.

24. BrainLAB had notice of the Heilbrun '318 patent by April 10, 2000.

25. The Trustees of Dartmouth College themselves do not seek damages from BrainLAB for the alleged infringement of the Roberts '056 patent.

26. The parties have also stipulated to the facts set forth in Exhibit 1 to this Order.

27. Each party stipulates for all purposes in this litigation that where a party has sold to a customer in the United States products and/or systems accused of infringement in this litigation by the opposing party, that such products and/or systems have been installed, set-up and are used by the party's customers and end users in the manner recommended or advised in the party's product literature pertaining to the products and systems sold to that customer, including, without limitation, all applicable manuals, instructions for use, user's guides, operational guides, service and maintenance guides, or as used in its demonstrations to customers and videotaped demonstrations to the opposing party.

28. The parties agree that the purpose of this stipulation is to avoid the burden and expense of taking additional depositions of, or introducing the testimony

at trial from, the opposing party's customers or end users as additional evidence in support of a party's allegations of direct infringement, or to oppose any allegation of direct infringement.  The parties make this stipulation to avoid burdening non-party customers and end users, most of whom are likely doctors and hospitals.

29. Neither party, by making this stipulation, admits that any recommendations or advice for the use of its products, nor any action of its customers or end users pursuant thereto, constitutes an act of infringement.  Each party fully reserves its claims and defenses that its recommended or advised manner of use of its products does not constitute infringement of any type.  Moreover, each party reserves its rights to depose any customer witness for purposes other than to obtain evidence in support of a party's allegations of direct infringement, or to oppose any allegation of direct infringement.

30. This stipulation is for the purposes of this litigation only and shall not be binding upon any party in any other litigation or proceeding or any nature whatsoever.

31. The parties further agree to the authenticity under Fed. R. Evid. 901 of each party's printed product labeling and other product literature, including without limitation all applicable manuals, instructions for use, user's guides, handbooks, operational guides, service and maintenance guides, software and similar documents produced by a party to the opposing party.

**B.** **Stipulations Concerning Evidence and Demonstratives**

32. Legible photocopies of United States patents and U.S. patent file histories, may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections that might be made to the admissibility of certified copies.

33. Any document that on its face appears to have been authored or prepared by an employee, officer or agent of a party shall be deemed *prima facie* to be authentic, subject to the right of the party against whom such a document is offered to introduce evidence to the contrary.

34. Any document that on its face appears to be authored or prepared by a third party that was produced in discovery shall be deemed *prima facie* to be authentic, subject to the right of the party against whom such a document is offered to introduce evidence to the contrary.

35. The parties agree that notice of a party's intended use of blowups (enlargements) of admitted trial exhibits need not be given (and need not be exchanged as a demonstrative exhibit), whether or not highlighted, as long as the party has identified its intention to use the trial exhibit according to the following two paragraphs.

36. The parties have agreed to exchange demonstratives on September 8, 2005.

37. The parties further agree that, on a rolling basis, at 9 pm MT three calendar days before a witness is to be examined during a party's case (whether live or by deposition), the party offering the witness will identify the witness and all demonstratives and exhibits to be used with the witness. For example, if a

witness is to testify on Thursday, the witness, as well as all exhibits (both
demonstrative and otherwise) to be used with the witness, will be identified
by 9 pm MT the preceding Monday.  This agreement is in addition to, but not
in lieu of, the parties' identification of witnesses and exhibits as set forth in
Exhibits 2-5 to this Order.

C.   **Stipulated Governing Law.**

38.  This action is governed by the Patent Laws of the United States, 35 U.S.C. §
101 *et seq.*

## 5.   PENDING MOTIONS

A.   **SNT's pending motions:**

1.   SNT's Motion For Bifurcation of Trial.  [Filed Docket # 296].

2.   SNT's Motion In *Limine.* No. 1:  To Permit SNT to Show an Image-
Guided Surgery Video as a Demonstrative Exhibit [to be filed August 15,
2005, Docket # ____]

3.   SNT's Motion In *Limine* No. 2:  To Exclude Evidence Concerning
BrainLAB's '659 Patent and the *Nomos* Decision from the U.S. District
Court of Delaware [to be filed August 15, 2005, Docket # _____]

4.   SNT's Motion In *Limine* No. 3:  To Exclude Certain Expert Opinions [to
be filed August 15, 2005, Docket #_____]

5.   SNT's Motion In *Limine* No. 4:  To Exclude Evidence Concerning
BrainLAB's Eighth Affirmative Defense [to be filed August 15, 2005,
Docket #_____]

6.     SNT's Motion In *Limine* No. 5:  To Exclude Certain Evidence Concerning the Inventorship of the Bucholz '454 Patent [to be filed August 15, 2005, Docket #____]

7.     SNT's Motion to Compel Concerning BrainLAB's Advice of Counsel Defense on August 15, 2005 [to be filed August 15, 2005, Docket # ___].

**B.     <u>BrainLAB's pending motions</u>:**

1.     Motion for Summary Judgment of Non-Infringement of U.S. Patent Nos. 5,383,454 and 5,851,183 (Bucholz) by Defendants BrainLAB AG, BrainLAB, Inc., BrainLAB Medizinischche Computersystems GmbH, BrainLAB USA, Inc. [Docket ## 247, 248, 274, 275, 277, 278, 280, and 286].

2.     Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 4,722,056 (Roberts) by Defendants BrainLAB AG, BrainLAB, Inc., BrainLAB Medizinishche Computersystems GmbH, BrainLAB USA, Inc. [Docket ## 250, 251, 252, 269, 275, 277, 278, 280, and 284].

3.     Motion for Summary Judgment of Noninfringement of the "Heilbrun Patents" by Defendants BrainLAB AG, BrainLAB, Inc., BrainLAB Medizinishche Computersystems GmbH, BrainLAB USA, Inc.  [Docket ## 259, 260, 261, 272, 273, and 287].

4.     Motion for Summary Judgment of Invalidity of the "Heilburn Patents" by Defendants BrainLAB AG, BrainLAB, Inc., BrainLAB Medizinishche Computersystems GmbH, BrainLAB USA, Inc.  [Docket ## 262, 263,

264, 270, 271, and 285].

5.      BrainLAB's Motion In *Limine* To Exclude Plaintiffs' StealthStation Devices.  [Docket # ___].

6.      BrainLAB's Motion In *Limine* To Exclude Marion Stewart's Supplemental Expert Report.  [Docket # ___].

7.      BrainLAB's Motion In *Limine*  To Exclude The Second Supplemental Infringement Report Of  Eric Grimson And The Rebuttal And Second Supplemental Infringement Expert Reports Of Russell Taylor. [Docket # ___].

8.      BrainLAB's Motion To Dismiss Counts IV, V And VII Of Plaintiffs' Fourth Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(1) And 12(b)(6) For Lack Of Standing.  [Docket # ___].

## 6.    WITNESSES

A.      SNT's list of witnesses it may offer at trial is attached as Exhibit 2.

B.      BrainLAB's list of witnesses it may offer at trial is attached as Exhibit 3.

## 7.    EXHIBITS

A.      SNT's list of exhibits it may offer at trial is attached as Exhibit 4.

B.      BrainLAB's list of exhibits it may offer at trial is attached as Exhibit 5.

C.      Copies of listed exhibits must be provided to opposing counsel no later than five days after the final pretrial conference.  The parties will therefore exchange copies of their exhibits by August 26, 2005.

D.     The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 11 days after the exhibits are provided.  The parties will file and exchange their objections to each other's exhibits by September 6, 2005.

## 8.     DISCOVERY

Except for SNT's pending Motion to Compel specific willfulness discovery, and some remaining fact and expert depositions, discovery is complete.

## 9.     SPECIAL ISSUES

A.     On August 16, 2005, SNT will furnish a list of miscellaneous issues it would like to address at the Final Pretrial Conference on August 19, 2005.

## 10.     SETTLEMENT

A.     Counsel for the parties met in person on May 14-15, 2002 in Chicago, Illinois, with Edward Infante (Retired Judge) to discuss in good faith the settlement of the case.  The participants in the settlement conference included counsel and party representatives.

B.     On July 25, 2005, the parties also discussed the possibility of settlement.

C.     The parties do not intend to hold future settlement conferences.  It appears from the discussions by the parties and counsel that there is little possibility of settlement.

D.     No further settlement conference or other alternative dispute resolution method is currently scheduled.

E.     Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR.16.6.

## 11.    OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed it with the clients against whom claims are made in this case.

## 12.    EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the Court or by order of the Court to prevent manifest injustice.  The pleadings will be deemed merged herein.  This Final Pretrial Order supersedes the Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13.    TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

Trial is scheduled to begin September 12, 2005.  Docket # 244.

### A.    SNT's Statement

SNT estimates that this case can be tried in two calendar weeks.  For the reasons set forth in its motion to bifurcate trial (Docket # 296), SNT proposes that the Court try the legal issues, including the issues of infringement, validity of the Heilbrun patents in suit, willful infringement and damages, to a jury beginning September 12, 2005 for a period of approximately 7-8 trial days.  SNT further proposes that the Court thereafter conduct a bench trial on the remaining equitable issues, including BrainLAB's affirmative defenses of laches and estoppel and

counterclaims of inequitable conduct.  SNT expects a bench trial on the equitable issues to last

approximately 2 trial days.  Together, SNT expects that the jury trial and the bench trial would

last for a sum total of two calendar weeks.

### B.      BrainLAB's Statement

BrainLAB believes that bifurcation of the trial is not necessary and would add to the total

length of the proceeding, as it would require that witnesses be recalled to the stand to testify in

both portions of the proposed bifurcated cases, as set out more fully in the opposition BrainLAB

will file in response to the plaintiffs' motion to bifurcate.

DATED this 15th day of August, 2005.

BY THE COURT:


_____

Richard P. Matsch
Senior United States District Judge

APPROVED:


s/James E. Hartley_____                     s/Marc David Flink_____
James E. Hartley, Esq.                               Marc David Flink, Esq.
Holland & Hart, LLP                                  Baker & Hostetler – Colorado
United States Dist. Ctr. Box 06                      District Court Box Number 17
555 Seventeenth St. #3200                            303 East Seventeenth Ave. #1100
Denver, CO 80202                                     Denver, CO 80203
Phone: 303/295-8237                                  Phone: 303/764-4030


Terrence P. McMahon, Esq.                            Thomas H. Shunk, Esq.
Vera M. Elson, Esq.                                  Baker & Hostetler – Ohio
McDermott Will & Emery LLP                           1900 East 9th Street
3150 Porter Drive                                    3200 National City Center
Palo Alto, CA 94304                                  Cleveland, OH 44114-3485
Phone: 650/813-5000                                  Phone: 216/861-7592

Daniel R. Foster, Esq.
Christopher D. Bright, Esq.
McDermott Will & Emery LLP
18191 Von Karman Ave., Suite 400
Irvine, CA 92614
Phone: 949/851-0633

David W. Harlan, Esq.
Senniger Powers
One Metropolitan Square
Suite 1600
Saint Louis, MO 63102
Phone: 314/231-5400

**Attorneys for Plaintiffs,**
**MEDTRONIC NAVIGATION, INC.,**
**MEDTRONIC SOFAMOR DANEK,**
**INC., SOFAMOR DANEK HOLDINGS,**
**INC., ST. LOUIS UNIVERSITY, and**
**TRUSTEES OF DARTMOUTH**
**COLLEGE**

Jay R. Campbell, Esq.
John J. Del Col, Esq.
Joshua M. Ryland, Esq.
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Ave., 19th Floor
Cleveland, OH 44115
Phone: 216/621-1113

**Attorneys for Defendants**
**BRAINLAB MEDIZINISHCHE**
**COMPUTERSYSTEMS GmbH**
**BRAINLAB AG, BRAINLAB USA,**
**INC., and BRAINLAB, INC.**

3438574_2.DOC