IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 98-CV-1072-RPM-OES

MEDTRONIC NAVIGATION, INC., f/k/a SURGICAL NAVIGATION TECHNOLOGIES, INC., a Delaware corporation,
MEDTRONIC SOFAMOR DANEK, INC., an Indiana corporation,
SOFAMOR DANEK HOLDINGS, INC., a Delaware corporation,
ST. LOUIS UNIVERSITY, a Missouri corporation, and
TRUSTEES OF DARTMOUTH COLLEGE, a New Hampshire corporation.

Plaintiffs,

v.

BRAINLAB MEDIZINISHCHE COMPUTERSYSTEMS GMBH, a German corporation,
BRAINLAB AG, a German corporation,
BRAINLAB USA, INC., a Delaware corporation, and
BRAINLAB, INC., a Delaware corporation

Defendants.

---

**PLAINTIFFS' PROPOSED FINAL JURY INSTRUCTIONS**

---

Date: September 23, 2005.

Respectfully submitted,

s/James E. Hartley
James E. Hartley
Lee F. Johnston
Conor F. Farley
HOLLAND & HART, L.L.P.
555 Seventeenth Street, Suite 3200
P.O. Box 8749
Denver, Colorado 80202-8749
Phone: (303) 295-8000
jhartley@hollandhart.com

Terrence P. McMahon
Vera M. Elson
McDERMOTT WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Phone: (650) 813-5000
tmcmahon@mwe.com
**ATTORNEYS FOR PLAINTIFFS**

TABLE OF CONTENTS


| No. | Instruction | Page |
|---|---|---|
| 1. | General Instructions [DELETED] | 2 |
| 2. | Burdens of Proof | 3 |
| 2A. | Direct and Circumstantial Evidence [NEW] | 4 |
| 3. | The Parties and the Nature of the Case [DELETED] | 6 |
| 4. | The Patent System, Generally [DELETED] | 8 |
| 5. | The Parts of a Patent [DELETED] | 10 |
| 6. | The Significance of Patent Claims [REVISED] | 12 |
| 7. | How a Patent is Obtained [DELETED] | 14 |
| 8. | Issues to be Decided [DELETED] | 15 |
| 9. | SNT's Contentions: Direct Infringement [DELETED] | 16 |
| 10. | Indirect Infringement [DELETED] | 18 |
| 11. | Damages [DELETED] | 20 |
| 12. | Willful Infringement [DELETED] | 21 |
| 13. | BrainLAB's Contentions: Invalidity [DELETED] | 22 |
| 14. | Anticipation [DELETED] | 23 |
| 15. | Obviousness [DELETED] | 24 |
| 16. | Conduct of the Jury and the Trial [DELETED] | 25 |

**Post-Evidence Jury Instructions**

| No. | Instruction | Page |
|---|---|---|
| 17. | The Parties and Their Contentions [REVISED] | 26 |
| 18. | The Patent System | 28 |
| 19. | The Claims of the Patents in Suit | 29 |
| 20. | Construction of the Claims | 30 |
| 21. | Independent and Dependent Claims [DELETED] | 32 |
| 22. | Means-Plus-Function Claim Limitations | 34 |
| 23. | "Compromising" Claims [DELETED] | 36 |
| 24. | Limitations of the Claims at Issue [REVISED] | 37 |
| 25. | Patent Infringement Generally – Direct Infringement [REVISED] | 41 |

TABLE OF CONTENTS cont.


| No. | Instruction | Page |
| --- | --- | --- |
| 26. | Infringement – Every Claim Limitation Must Be Present, Either Literally or Under the Doctrine of Equivalents | 43 |
| 27. | Limitations of the Doctrine of Equivalents [DELETED] | 46 |
| 28. | Infringement – Means-Plus-Function Claim Limitations | 48 |
| 29. | Determination of Infringement | 52 |
| 30. | Infringement of Dependent Claims [DELETED] | 53 |
| 31. | Infringement and Improvements to Patented Invention | 54 |
| 32. | Indirect Infringement | 55 |
| 33. | Inducing Patent Infringement [REVISED] | 57 |
| 34. | Contributory Infringement [REVISED] | 60 |
| 35. | Willful Infringement | 62 |
| 36. | Validity in General [REVISED] | 66 |
| 37. | The Prior Art [REVISED] | 68 |
| 38. | Prior Art – Date of Invention [REVISED] | 69 |
| 39. | Prior Art – Prior Patents and Patent Applications [REVISED] | 71 |
| 40. | Anticipation/Lack of Novelty [REVISED] | 73 |
| 41. | Obviousness [REVISED] | 76 |
| 42. | The Scope and Content of the Prior Art [REVISED] | 79 |
| 43. | Differences Between the Invention of the Clams and the Prior Art [REVISED] | 80 |
| 44. | Level of Ordinary Skill | 82 |
| 45. | Objective Indications Concerning Obviousness | 83 |
| 46. | Determination of Obviousness [REVISED] | 85 |
| 47. | Failure to Name Co-Inventor | 86 |
| 48. | Corroboration | 88 |
| 49. | Inequitable Conduct | 89 |
| 50. | Damages | 90 |
| 51. | Compensatory Patent Damages in General | 91 |

TABLE OF CONTENTS cont.


| No. | Instruction | Page |
|---|---|---|
| 52. | Notice Requirement for Patents with Product Claims | 92 |
| 53. | Two Types of Damages – Lost Profits and Reasonable Royalty | 93 |
| 54. | Lost Profits, Types and Burden of Proof | 94 |
| 55. | Lost Sales | 96 |
| 56. | Manufacturing and Marketing Ability | 98 |
| 57. | Absence of Acceptable Non-Infringing Substitutes | 99 |
| 58. | Lost Profits Due to Price Erosion | 101 |
| 59. | Amount of Lost Profits | 102 |
| 60. | Reasonable Royalty | 103 |
| 61. | What is Reasonable Royalty? | 104 |
| 62. | Total Damages | 107 |

# JURY INSTRUCTION NO. 1 [DELETED]

**GENERAL INSTRUCTIONS**

[Court to provide preliminary general instructions]

# JURY INSTRUCTION NO. 2

**BURDENS OF PROOF**

In any legal action, facts must be proved by a required standard of evidence, known as the "burden of proof". In a patent case such as this, there are two different burdens of proof that are used.

The first burden of proof standard is known as "preponderance" of the evidence. This requires that, in order for a party to prevail, you must be persuaded that what the party seeks to prove is more probably true than not true.

The second burden of proof standard is a higher one, and is known as "clear and convincing" evidence. It requires that you must be persuaded that it is highly probable that what the party seeks to prove is true.

You may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt". That requirement is the highest burden of proof. It does not apply to a patent case such as this one, and you should, therefore, put it out of your mind.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 1.1 (as modified).

**AUTHORITIES**

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1335, 1337 (Fed. Cir. 2005); *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1367 (Fed. Cir. 2002).

# JURY INSTRUCTION 2A [NEW]

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on the evidence presented.

**SOURCE**: 1 L. Sand, *et al*., Modern Federal Jury Instruction 74-2.

**AUTHORITIES**

*Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960).

# JURY INSTRUCTION NO. 3 [DELETED]

**THE PARTIES AND THE NATURE OF THE CASE**

As I have told you, this is a patent case. It involves the following four patents and three inventors. The patents are as follows: U.S. Patent Number 4,722,056, United States Patent Number 5,383,454, United States Patent Number 5,389,101, and United States Patent Number 5,603,318.

Patents are often referred to by their last three digits. U.S. Patent Number 4,722,056 shall be referred to as "the Roberts '056 patent" because it lists Dr. David W. Roberts as the primary inventor. United States Patent Number 5,383,454 shall be referred to as "the Bucholz '454 patent" because it lists Dr. Richard D. Bucholz as the inventor. United States Patent Number 5,389,101 and United States Patent Number 5,603,318 shall be referred to as "the Heilbrun '101 patent" and "the Heilbrun '318 patent" because each list Dr. Mark Peter Heilbrun as the primary inventor.

The patents in this case relate to image-guided surgical navigation technology. As its name suggests, this technology involves the use of images to guide a surgeon during surgery. The technology provides a map of the patient's body part, such as the patient's brain, which permits the surgeon to more accurately navigate through that body part using a medical instrument. This technology can be applied to more precisely locate and operate upon parts of a patient's body. For example, this technology will assist the surgeon in extracting a brain tumor without damaging surround healthy brain tissue.

During the trial the parties will offer testimony to familiarize you with this technology.

The plaintiffs are collectively referred to as Medtronic. Medtronic contends that BrainLAB, the defendant in this case, is infringing the Bucholz '454 patent, the Roberts '056 patent, the Heilbrun '101 patent, and the Heilbrun '318 patent, by selling surgical navigation equipment. Medtronic contends that it is entitled to damages caused by that infringement.

BrainLAB denies that it is infringing and contends that the Bucholz '454 patent is invalid. BrainLAB further contends that the Heilbrun '101 patent and the Heilbrun '318 patent are invalid. I will tell you about BrainLAB's reasoning on these issues shortly. BrainLAB does not contest the validity of the Roberts '056 patent.

I will explain to you the meaning of these contentions in a moment, but first I will explain the U.S. patent system, the parts of a patent, and how a person gets a patent.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 2.1.

# JURY INSTRUCTION NO. 4 [DELETED]

**THE PATENT SYSTEM, GENERALLY**

Patents are issued by the United States Patent and Trademark Office, which is part of our government. The government is authorized by the United States Constitution to enact patent laws and issue patents to protect inventions. Inventions that are protected by patents may be of products, compositions, or of methods for doing something, or for using or making a product or composition.

The owner of a patent has the right, for the life of the patent, to prevent others from making, using, offering for sale, selling or importing the invention covered by the patent.

A patent is granted for a set period of time, either 20 years from the time the patent application was filed, or 17 years from the date the U.S. Patent and Trademark Office issues the patent, depending on the circumstances. Once a patent expires, anyone is free to use the invention covered by the patent.

During the term of the patent, however, if another person makes, uses, offers to sell, sells or imports something that is covered by the patent without the patent owner's consent, that person is said to infringe the patent. The patent owner enforces a patent against persons believed to be infringers in a lawsuit in federal court, such as in this case.

To be entitled to patent protection an invention must be new, useful and non-obvious. A patent cannot legally take away from people their right to use that which was known, or that which was obvious from what was known, before the invention was made. Thus, a patent will not be valid if it deprives people of the right to use old or

known products, or of their right to use products that were obvious at the time the invention was made. That which was already known at the time of the invention is called the "prior art".

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 2.2.

# JURY INSTRUCTION NO. 5 [DELETED]

**THE PARTS OF A PATENT**

A patent includes two basic parts, a written description of the invention and the patent claims. The written description, which may include drawings, is often referred to as the "specification" of the patent.

You have been provided with a copy of the Bucholz '454 Patent. Please refer to the patent as I identify its different sections.

The cover page of the Bucholz '454 Patent provides identifying information, including the date the patent issued and patent number along the top, as well as the inventor's name, the filing date, the assignee, and a list of the prior art publications considered in the Patent Office when the patent was applied for.

The specification of the Bucholz '454 Patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.

Next, are the drawings, which appear as Figures 1A to 4 on the next 7 pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent specification. The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the 5,383,454 Patent begins at column 1, line 1, and continues to column 10, line 27. It includes a background section, a summary of the invention, and a detailed description of the invention, including some specific examples.

The specification ends with one or more numbered paragraphs. These are called the claims. The claims may be divided into a number of parts, referred to as "claim limitations".

The claims of the Bucholz '454 patent start at column 10 and continue until the end of the patent.

The claims of the Roberts '056 patent start at column 175 line 12 and continue to the end of the patent.

In the Heilbrun '101 Patent, the claims begin at column 14, line 4 and continue to the end of the patent, at column 18, line 55.

The claims of the Heilbrun '318 patent start at column 15 line 22 and continue to the end of the patent.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 2.3.

# JURY INSTRUCTION NO. 6 [REVISED]

**THE SIGNIFICANCE OF PATENT CLAIMS**

As I mentioned before the trial began, the claims of a patent are a main focus of a patent case because it is the claims that define the patent owner's rights under the law. That is, the claims define what the patent owner may exclude others from doing during the term of the patent.

The claims of a patent serve two purposes. First, they set out the boundaries of the invention covered by the patent. Second, they provide notice to the public of those boundaries. Thus, when a product is accused of infringing a patent, it is the patent claims that must be compared to the accused product to determine whether or not there is infringement. It is the claims of the patent that are infringed when patent infringement occurs. The claims are at issue as well when the validity of a patent is challenged. In reaching your determinations with respect to infringement and invalidity, you must consider each claim separately.

In this case, we have been concerned with the following claims:

1. Claim 14 of the Bucholz '454 patent;
2. Claim 1 of the Roberts '056 patent;
3. Claims 1 of the Heilbrun '101 patent; and
4. Claim 1 of the Heilbrun '318 patent.

Medtronic contends that these claims are infringed. BrainLAB contends that these claims are not infringed. BrainLAB also alleges that the Bucholz '454 patent, the Heilbrun '101 patent, and the Heilbrun '318 patent are invalid.

The language of patent claims may not be clear to you, or its meaning may be disputed by the parties. I will instruct you later about the meaning of some of the claim language. You must use these meanings I give you when you decide the issues of infringement and invalidity.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 2.3.

## JURY INSTRUCTION NO. 7 [DELETED]

**HOW A PATENT IS OBTAINED**

The U.S. Patent and Trademark Office is the agency of our government that examines patent applications and issues patents. When an applicant for a patent files a patent application with the Patent and Trademark Office, the application is assigned to a Patent Examiner. The Patent Examiner examines the application to determine whether or not the invention described in the patent application meets the requirements of the patent laws for patentable inventions.

The Patent Examiner advises the applicant of his or her findings in a paper called an "office action". The Examiner may "reject" the claims if he or she believes they do not meet the requirements for patentable inventions. The applicant may respond to the rejection with arguments to support the claims by making changes or amendments to the claims, or by submitting new claims. If the Examiner concludes that the legal requirements for a patent have all been satisfied, he or she "allows" the claims and the application issues as a patent.

This process, from the filing of the patent application to the issuance of the patent, is called "patent prosecution". The record of papers relating to the patent prosecution is referred to as the prosecution history or file history. The prosecution history becomes available to the public when the patent issues.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 2.5.

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 18 of 111

## JURY INSTRUCTION NO. 8 [DELETED]

**ISSUES TO BE DECIDED**

I will now give you some information about the issues that have been presented to you at this trial and the law that you must follow in reaching your verdict. At the conclusion of my instructions, you will be given a verdict form and questions that you must answer in reaching your verdict. I will give you more specific instructions then to follow as you deliberate to reach your verdict.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 3.

# JURY INSTRUCTION NO. 9 [DELETED]

**MEDTRONIC'S CONTENTIONS**

I will first describe to you Medtronic's contentions.

**DIRECT INFRINGEMENT**

As I told you, Medtronic contends that BrainLAB infringes several claims of the Bucholz '454 patent, the Heilbrun '101 patent, the Heilbrun '318 patent, and the Roberts '056 patent, by BrainLAB's sale of surgical navigation equipment. This is called direct infringement. Medtronic seeks to prove direct infringement in two ways. The first is called "literal" infringement. To prove literal infringement, Medtronic must prove that it is more probable than not that one or more of BrainLAB's products contains each and every limitation of one or more of the patent claims.

The second type of infringement is called infringement under the "doctrine of equivalents". To prove infringement under the doctrine of equivalents, Medtronic must prove that it is more probable than not that, for each claim limitation not literally found in one or more of BrainLAB's products, the product contains an equivalent structure or process step. In order to be equivalent, the differences between the missing claim limitation and the structure or process step in one or more BrainLAB's products must be insubstantial. I will later explain in more detail the various ways by which you may determine whether or not these differences, if they exist, are insubstantial.

Medtronic asserts that BrainLAB's surgical navigation products, including BrainLAB's VectorVision Classic, VectorVision Squared, VectorVision Compact, VectorVision Sky, Kolibri, and BrainSUITE products, infringe the Bucholz '454 patent under the doctrine of equivalents.

Medtronic asserts that BrainLAB's products with Microscope Integration infringe the Roberts '056 patent under the doctrine of equivalents.

Medtronic alleges that BrainLAB's VectorVision Classic, VectorVision Squared, VectorVision Compact, VectorVision Sky, Kolibri, ExacTrac and BrainSUITE products infringe each of the Heilbrun '101 and '318 patents, both literally and under the doctrine of equivalents.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 3.1 and 3.1.1.

## JURY INSTRUCTION NO. 10 [DELETED]

**INDIRECT INFRINGEMENT**

Medtronic also contends that BrainLAB indirectly infringes claims of the Bucholz '454 patent, the Roberts '056 patent, the Heilbrun '101 patent, and the Heilbrun '318 patent, by inducing or encouraging others to directly infringe, or by contributing to the infringement of others.

To prove that BrainLAB induced someone else to infringe the Bucholz '454 patent, the Roberts '056 patent, the Heilbrun '101 patent, and the Heilbrun '318 patent, Medtronic must prove that it is more probable than not that BrainLAB encouraged or instructed one or more other persons to use a product in a manner that infringes, and that BrainLAB knew or should have known that its encouragement or instructions would likely result in the other person doing that which you have found to be an infringement.

To prove that BrainLAB contributed to someone else's infringement of the Bucholz '454 patent, the Roberts '056 patent, the Heilbrun '101 patent, and the Heilbrun '318 patent, Medtronic must prove that it is more probable than not that BrainLAB supplied an important component of the infringing part of the product; that the component is not a common component suitable for non-infringing use; and that BrainLAB supplied the component with the knowledge of the patent and knowledge that the component was especially made or adapted for use in an infringing manner. Each party stipulates for all purposes in this litigation that where a party has sold to a customer in the United States products and/or systems accused of infringement in this litigation by the opposing party, that such products and/or systems have been installed,

set-up and are used by the party's customers and end users in the manner recommended or advised in the party's product literature pertaining to the products and systems sold to that customer, including, without limitation, all applicable manuals, instructions for use, user's guides, operational guides, service and maintenance guides, or as used in its demonstrations to customers and videotaped demonstrations to the opposing party.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 3.1.2 (as modified).

**AUTHORITIES**

35 U.S.C. § 271(c); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch &Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfr. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

# JURY INSTRUCTION NO. 11 [DELETED]

**DAMAGES**

Plaintiffs claim that they have suffered damages as a result of BrainLAB's infringement in the form of lost profits that Plaintiffs would have made if BrainLAB had not infringed and/or a reasonable royalty on each of BrainLAB's sales of infringing products. I will explain to you at the end of the case how lost profits are calculated and how a reasonable royalty is determined. Plaintiffs must prove by the more probable than not standard the damages they have suffered as a result of BrainLAB's infringement.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 3.1.3.

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 24 of 111

# JURY INSTRUCTION NO. 12 [DELETED]

**WILLFUL INFRINGEMENT**

Medtronic claims that BrainLAB has knowingly and willfully infringed the claims of the Bucholz '454 patent, the Roberts '056 patent, the Heilbrun '101 patent, and the Heilbrun '318 patent. To prove willful infringement of each patent, Medtronic must prove that BrainLAB knew of the patent, and that BrainLAB did not have a reasonable belief either that the patent was invalid or unenforceable, or that it did not infringe the patent.

Medtronic's willful infringement claim requires a higher burden of proof – the highly probable standard <u>that requires clear and convincing evidence</u> – than Medtronic's other claims, which require proof by the more probable than not standard. I will explain in more detail at the end of the case how you decide willful infringement.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 3.1.4 (as modified).

**AUTHORITIES**

*State Contracting & Engineering Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1063 (Fed. Cir. 2003).

# JURY INSTRUCTION NO. 13 [DELETED]

**BRAINLAB'S CONTENTIONS**

I will now instruct you on BrainLAB's contentions:

**INVALIDITY**

BrainLAB contends that the Bucholz '454 patent, the Heilbrun '101 patent, and the Heilbrun '318 patent are invalid for a number of reasons. []These patents were granted by the Patent and Trademark Office and are presumed valid. This presumption of validity applies to all grounds upon which validity may be challenged. It is your job to determine whether or not BrainLAB has proven that the legal requirements of patentability were not met; that is, it is your job to determine whether or not BrainLAB has proven that the patents are invalid.

I will now explain to you briefly the legal requirements for each of the grounds on which BrainLAB relies to contend that the claims of the Bucholz '454 patent, the Heilbrun '101 patent and the Heilbrun '318 patent are invalid. I will provide more details for each ground in my final instructions.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 3.2 and 3.2.1 (as modified).

**AUTHORITIES**

35 U.S.C. § 282; *Bd. of Regents v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1308 (Fed. Cir. 2004); *Checkpoint Systems v. USITC*, 54 F3d 756, 761 (Fed. Cir. 1995); *Panduit Corp. v. Dennison*, 810 F.2d 1561, 1569-70 (Fed. Cir. 1987).

# JURY INSTRUCTION NO. 14 [DELETED]

**ANTICIPATION**

BrainLAB contends that the claims of the Heilbrun '101 patent and the Heilbrun '318 patent are not new. An invention that is not new is said to be "anticipated" by the prior art. In order to prove that a claim is anticipated by the prior art, BrainLAB must prove, by clear and convincing evidence, that it is highly probable that each and every limitation of the claim is present in a single item of prior art.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 3.2.2 (as modified).

**AUTHORITIES**

*NTP, Inc. v. Research in Motion, Ltd.*, 2005 U.S. App. LEXIS 15920, at *115 (Fed. Cir. Aug. 2, 2005).

# JURY INSTRUCTION NO. 15 [DELETED]

**OBVIOUSNESS**

BrainLAB contends that the claims of the Heilbrun '101 patent and the Heilbrun '318 patent are invalid for obviousness. A patent claim will be invalid, even if it is not anticipated by the prior art, if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time it was made. The ordinary skilled person is a person of average education and training in the field of the invention and is presumed to be aware of all of the relevant prior art. There must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims in the public prior art, in the problem addressed by the invention, or in the knowledge of one of ordinary skill in the art. You will hear evidence about the skill and experience of such a skilled person during the course of the trial.

In order to prove invalidity based on obviousness, BrainLAB must prove, by clear and convincing evidence, that it is highly probable that the claims in the Heilbrun '101 patent and the Heilbrun '318 patent would have been obvious to a person of ordinary skill in the art at the time the invention was made.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 3.2.3 (as modified).

**AUTHORITIES**

*NTP, Inc. v. Research in Motion, Ltd.*, 2005 U.S. App. LEXIS 15920, at *115 (Fed. Cir. Aug. 2, 2005); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005); *In re Rouffet*, 149 F.3d 1350, 1356 (Fed. Cir. 1998);.

# JURY INSTRUCTION NO. 16 [DELETED]

**CONDUCT OF THE JURY AND THE TRIAL**

[Court to provide general instructions]

# JURY INSTRUCTION NO. 17 [REVISED]

**THE PARTIES AND THEIR CONTENTIONS**

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

**MEDTRONIC'S CONTENTIONS**

I will first describe to you Medtronic's contentions.

**DIRECT INFRINGEMENT**

As I told you, Medtronic contends that BrainLAB infringes several claims of the Bucholz '454 patent, the Heilbrun '101 patent, the Heilbrun '318 patent, and the Roberts '056 patent, by BrainLAB's sale of surgical navigation equipment. This is called direct infringement. Medtronic seeks to prove direct infringement in two ways. The first is called "literal" infringement. To prove literal infringement, Medtronic must prove that it is more probable than not that one or more of BrainLAB's products contains each and every limitation of one or more of the patent claims.

The second type of infringement is called infringement under the "doctrine of equivalents". To prove infringement under the doctrine of equivalents, Medtronic must prove that it is more probable than not that, for each claim limitation not literally found in one or more of BrainLAB's products, the product contains an equivalent structure or process step. In order to be equivalent, the differences between the missing claim limitation and the structure or process step in one or more BrainLAB's products must be insubstantial. I will later explain in more detail the various ways by which you may determine whether or not these differences, if they exist, are insubstantial.

Medtronic asserts that BrainLAB's surgical navigation products, including BrainLAB's VectorVision Classic, VectorVision Squared, VectorVision Compact, VectorVision Sky, Kolibri, and BrainSUITE products, infringe the Bucholz '454 patent under the doctrine of equivalents.

Medtronic asserts that BrainLAB's products with Microscope Integration infringe the Roberts '056 patent under the doctrine of equivalents.

Medtronic alleges that BrainLAB's VectorVision Classic, VectorVision Squared, VectorVision Compact, VectorVision Sky, Kolibri, ExacTrac and BrainSUITE products infringe each of the Heilbrun '101 and '318 patents, both literally and under the doctrine of equivalents.

Medtronic contends that it is entitled to damages caused by BrainLab's infringement.

**BRAINLAB'S CONTENTIONS**

BrainLAB denies that it is infringing and contends that the Bucholz '454 patent is invalid. BrainLAB further contends that the Heilbrun '101 patent and the Heilbrun '318 patent are invalid. I will tell you about BrainLAB's reasoning on these issues shortly.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction Nos. 5-5.4.

# JURY INSTRUCTION NO. 18

**THE PATENT SYSTEM**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 6.

# JURY INSTRUCTION NO. 19

**THE CLAIMS OF THE PATENTS IN SUIT**

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.

Claims are usually divided into parts or steps, called "limitations". For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 7.

# JURY INSTRUCTION NO. 20

**CONSTRUCTION OF THE CLAIMS**

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid and unenforceable.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

It may be helpful to refer to the copy of the patents that you have been given as I discuss the claims at issue here. The claims of the Bucholz '454 patent start at column 10 and continue until the end of the patent. In the Heilbrun '101 Patent, the claims begin at column 14, line 4 and continue to the end of the patent, at column 18, line 55. The claims of the Heilbrun '318 patent start at column 15 line 22 and continue to the end of the patent. The claims of the Roberts '056 patent start at column 175 line 12 and continue to the end of the patent.

I will be giving you a list of the claims of the patents at issue as part of the verdict form when I conclude my instructions.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 7.1.

**AUTHORITIES**

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258,

1267 (Fed. Cir. 2001); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001); *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1340-41 (Fed. Cir. 2000); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); Markman v. Westview Instruments, Inc., 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc); *Rival Co. v. Sunbeam Corp.*, 987 F. Supp. 1167, 1171 (W.D. Miss. 1997) aff'd without op., 185 F.3d 885 (Fed. Cir. 1999); *Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.*, No. 95C 7255, 1997 WL 187326, at *2 (N.D. Ill. April 11, 1997).

# JURY INSTRUCTION NO. 21 [DELETED]

**INDEPENDENT AND DEPENDENT CLAIMS**

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. Claim 14 of the Bucholz '454 patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

For example, claim 16 of the Bucholz '454 patent is a dependent claim. It refers to claim 14. To determine what dependent claim 16 covers, the words of that claim and the words of claim 14 must be read together.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 7.2.

**AUTHORITIES**

35 U.S.C. § 112 ¶ 4 (1984); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 236 F.3d 1363, 1369-70 (Fed. Cir. 2001); *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000); *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882

F.2d 498, 504 (Fed. Cir. 1989); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-23 (Fed. Cir. 1989).

# JURY INSTRUCTION NO. 22

**MEANS-PLUS-FUNCTION CLAIM LIMITATIONS**

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function. For example, let's say that a patent describes a table in which the legs are glued to the tabletop. One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop. Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, the patent claim recites a "means for securing the legs to the tabletop". This second type of claim limitation is called a "means-plus- function" limitation. It describes a means for performing the function of securing the legs to the tabletop, rather than expressly reciting the glue.

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the described structures. In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the function of securing the legs to the tabletop.

Claim 1 of the Heilbrun '101 patent and Claim 1 of the Heilbrun '318 patent include means-plus-function limitations. In instructing you about the meaning of a means-plus-function claim limitation, I will tell you, first, the function that each of the means-plus-function claim limitations performs; and second, the structure disclosed in the patent specification that corresponds to each means-plus-function limitation.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 7.4.

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 38 of 111

**AUTHORITIES**

35 U.S.C. § 112 ¶ 6 (1984); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-1310 (Fed. Cir. 1998); *B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424-25 (Fed. Cir. 1997).

# JURY INSTRUCTION NO. 23 [DELETED]

**"COMPRISING" CLAIMS**

The beginning portion, or preamble, of all of the claims of the Bucholz '454 patent, the Heilbrun '101 patent, the Heilbrun '318 patent, and the Roberts '056 patent uses the word "comprising". "Comprising" means "including" or "containing". A claim that uses the word "comprising" or "comprises" is not limited to products or processes having only the elements or steps that are recited in the claim, but also covers products or processes that add additional elements or steps.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 7.5.

**AUTHORITIES**

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811-12 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-29 (Fed. Cir. 1999); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372,1379-80 (Fed. Cir. 1998); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 874 (Fed. Cir. 1998); *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1177-79 (Fed. Cir. 1991).

# JURY INSTRUCTION NO. 24 [REVISED]

**LIMITATIONS OF THE CLAIMS AT ISSUE**

I have now instructed you as to the types of claims at issue in this case. I will next define the meaning of the words used in the patent claims at issue. You must use the definitions I provide to you in your consideration of infringement and invalidity issues.

**The Heilbrun '101 Patent – Claim 1**

"Medical workspace" – This term has a plain meaning and no construction is required.

"workspace imaging means positionable for producing a plurality of pairs of images of the medical workspace…" – the function of the workspace imaging means is producing a plurality of pairs of images of the medical workspace from two different positions. The corresponding structure is one or more video cameras and equivalents thereof, or one or more x-rays imaging devices and equivalents thereof.

"digitizing means operably disposed for digitizing each of said images of said image pairs to produce sets of digital image signals, one said set of digital image signals corresponding to each of said images" – Digitizing means is a means-plus-function limitation. The function is producing sets of digital output signals, corresponding to the images of the image pairs. The structure for performing the function is a digitizer, a device for converting images to digital signals, and equivalent structure.

"computing means connected to said digitizing means to receive said digital image signals therefrom, said computing means being operable to 1) establish a workspace coordinate framework …; 2) determine workspace coordinates …; 3) receive a set of scan coordinates …; 4) compute conversion coordinates …; and 5) perform said conversion functions …" – The functions of the computing means are to establish a workspace coordinate framework in three dimensions from a selected image pair made when the fiducial means is positioned in the workspace; determine workspace coordinates in the workspace coordinate framework of any selected point which can be identified from both images of an image pair; receive a set of scan coordinates and correlate scan coordinates and workspace coordinates; compute conversion functions for converting scan coordinates to corresponding workspace coordinates and for converting workspace coordinates of a selected feature to corresponding scan coordinates, and perform conversion functions for selected feature to corresponding scan coordinates, and perform conversion functions for selected features in the scan or in a selected one of the image pairs.

In short, the computing means receives from the digitizing means the digital signals corresponding to the two-dimensional images and from that information computes a three-dimensional reference system or map of the workspace, and correlates points in that three-dimensional reference system to points in the three-dimensional scan images taken of the patient before the operation. The computing means comprises a central processing unit, memory, a data input, an image processing unit, a data output for outputting a display signal, and hardware of software for computing a three-

dimensional workspace coordinate framework from the digitized images of the Fiducial means, and equivalent structure.

"Fiducial means…in said workspace for providing a series of Fiducial points held in a fixed special relation to one another" – the function of the Fiducial means is providing a series of fiducial points held in fixed spatial relation to one another. It is an arrangement of reference points held in fixed spatial relation to each other by a support structure and equivalents thereof, or an arrangement of reference points projected by a light projector, and equivalents thereof. The minimum number of points is determined by the particular projection algorithm employed.

"removably positionable" – capable of being moved and repositioned.

"establish a workspace coordinate framework" – a static or immovable coordinate system centered in the workspace that must be re-established if one or more of the cameras are moved.

**The Heilbrun '318 Patent – Claim 1**

"computing means … including memory structure having pattern recognition data and instrument structure data stored therein …" - This is a means-plus-function claim element.

"stored instrument structure data" – information about the physical structure of an instrument or elements attached thereto stored in the memory of the computing means.

**The Bucholz '454 Patent – Claim 14**

"reference means having a location outside the body" – In claim 14, reference means having a location outside the body is an array of microphones.

**The Roberts '056 Patent - Claim 1**

"computer-generated image" - an image generated by a computer containing information regarding a body part. It need not be a computer or photographic depiction of the body part, but may be, for example, a contour, outline, boundary, arrows, edge, or other generic information from an atlas of information about a body part. The computer-generated image may also include information regarding structures either above or below the focal plane of the microscope, and is not limited to the information corresponding to the focal plane of the microscope.

"reformatting" – translating or processing the image information to create a further computer-generated image.

"establishing the spatial relationship among the image information, the patient, and the focal plane of the microscope" means determining the relative position of objects to each other using a position and orientation measurement system, including an acoustic reference system or an electromagnetic reference system. As written, the claim does not include use of an optical reference system.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 7.8; Court's Ruling on Claim Construction Issues (dated September 29, 2004)..

# JURY INSTRUCTION NO. 25 [REVISED]

## PATENT INFRINGEMENT GENERALLY – DIRECT INFRINGEMENT

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement". In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers".

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare Claim 1 of the Heilbrun '101 patent, Claim 1 of the Heilbrun '318 patent, Claim 14 of the Bucholz '454 patent, and Claim 1 of the Roberts '056 patent, as I have defined them, to the accused products or processes I earlier mentioned, and determine whether or not there is infringement. You should not compare BrainLAB's products or processes with any specific example set out in the Heilbrun '101 patent, the Heilbrun '318 patent, the Bucholz '454 patent, or the Roberts '056 patent, or with Medtronic's products or processes. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. I will first discuss direct infringement.

Whether or not BrainLAB knew that what it was doing was an infringement does not matter. A person may be found to be a direct infringer of a patent even if he or she believes in good faith that what he or she is doing is not an infringement of any patent, and even if he or she does not even know of the patent.

In this case, Medtronic asserts that one or more of BrainLAB's products or processes directly infringe Claims 1 of the Heilbrun '101 patent, Claim 1 of the Heilbrun '318 patent, Claim 14 of the Bucholz '454 patent, and Claim 1 of the Roberts '056 patent. It is your job to determine whether or not Medtronic has proved by the more probable than not standard that defendant has directly infringed any of those claims.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 8.1.

**AUTHORITIES**

35 U.S.C. §§ 271-281 (1984 & Supp. 2001); *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n.*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985).

# JURY INSTRUCTION NO. 26

## INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS

In order to infringe a patent claim, a product must include every limitation of the claim. If BrainLAB's products or processes omit even a single structure or step recited in a claim, then you must find that BrainLAB has not infringed that claim. You must consider each of the patent claims separately.

A claim limitation may be present in an accused product or process in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused product or process just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

A claim limitation is present in an accused product or process under the doctrine of equivalents if the differences between them are insubstantial. One way to determine this is to look at whether or not the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention. Another way is to consider whether or not people of ordinary skill in the field of the invention believe that the structure or step of the accused product or process and the structure or step recited in the patent claim limitation are interchangeable. A person of ordinary skill is a person with average education and training in the field.

Equivalency is determined by what was known at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the

patent need not describe, all potential equivalents to the invention covered by the claims. Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part in the product and the claim requirement is not substantial. The fact that a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 8.3 (as modified).

**AUTHORITIES**

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997) (finding infringement under the doctrine of equivalents for a product that was developed after a patent issued because "[i]nsofar as the question under the doctrine of equivalents is whether an accused element is equivalent to a claimed element, the proper time for evaluating equivalency--and thus knowledge of interchangeability between elements-- is at the time of infringement, not at the time the patent was issued"); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950);

*Allen Engineering Corp. v. Bartell Indus., Inc*., 2002 WL 1765989 (Fed. Cir. 2002); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1334 (Fed. Cir. 2001); *Biovail Corp. Int'l v. Andrx Pharms., Inc*., 239 F.3d 1297, 1302-03 (Fed. Cir. 2001); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1107 (Fed. Cir. 2000); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1287 (Fed. Cir. 2000); *Bayer AG v. Elan Pharm., Research Corp.*, 212 F.3d 1241, 1247-50 (Fed. Cir. 2000); *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1301-02 (Fed. Cir. 1999); *Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1475 (Fed. Cir. 1998) (technology developed after the patent is issued may fall within the doctrine of equivalents); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*).

# JURY INSTRUCTION NO. 27 [DELETED]

**LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS**

One limit on the doctrine of equivalents occurs when the patent specification describes a specific role or function for a claim limitation. When this occurs, any equivalent structure must fill substantially the same role as that described in the patent for that limitation.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 8.4 (as modified).

**AUTHORITIES**

*Festo Corp. v. Shoketsu Kinzolu Kogyo Kabushiki Co.*, 122 S. Ct. 1831 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *Johnson & Johnson Associates v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); Smith & Nephew, Inc. v. Ethicon, Inc., 276 F.3d 1304, 1311 (Fed. Cir. 2001); *Bell Atlantic Network Servs., Inc., v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1279 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1320 (Fed. Cir. 2001); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001); *Forest Labs. v. Abbott Labs.*, 239 F.3d 1305, 1314 (Fed. Cir. 2001); *Biovail Corp. v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1301-02 (Fed. Cir. 2001); *Litton Sys., Inc. v. Honeywell Inc.*, 238 F.3d 1376, 1380 (Fed. Cir. 2001); *Johnson & Johnston Associates, Inc. v. R.E. Service Co.*, 238 F.3d 1347 (Fed. Cir. 2001); *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 238 F.3d 1341, 1344 (Fed. Cir. 2001); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000) (*en banc*); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir.

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 50 of 111

2000); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381-83 (Fed. Cir. 2000); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1251-54 (Fed. Cir. 2000); *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1416 (Fed. Cir. 2000); *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1366-68 (Fed. Cir. 1999); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998); *YBM Magnex, Inc. v. Int'l Trade Comm'n*, 145 F.3d 1317, 1320-22 (Fed. Cir. 1998); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1477 (Fed. Cir. 1998); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997); *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303- 04 (Fed. Cir. 1997); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1573-74 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106-08 (Fed. Cir. 1996); *Texas Instruments v. United States Int'l Trade Comm'n.*, 988 F.2d 1165, 1174 (Fed. Cir. 1993); *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1563-64 (Fed. Cir. 1991).

# JURY INSTRUCTION NO. 28

## INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

As I told you, a means-plus-function claim limitation describes a means for performing a particular function. A means-plus-function limitation may be present in an accused product literally or under the doctrine of equivalents.

To prove that an accused product includes a structure that is literally covered by a means- plus-function limitation, a patent owner must prove two things by the more probable than not standard. First, that the accused product contains a structure that performs the identical function to the function recited in the means-plus-function limitation. Second, that the structure of the accused product that performs that function is either identical or equivalent to the corresponding structure disclosed in the patent specification.

If the function performed by the structure is not identical to the function recited in the means-plus-function limitation, the patent owner may prove that the accused product is covered by the means-plus-function limitation under the doctrine of equivalents. To prove equivalents, the patent owner must prove, first, that the accused product contains a structure that performs an equivalent function to the one recited in the claim limitation; and second, that the structure that performs that function is identical or equivalent to the structure described in the patent specification.

Whether or not the structure or function of the accused product is equivalent to the structure disclosed in the patent and the function recited in the claims is decided from the perspective of a person of ordinary skill in the field of the invention. A person of ordinary skill is a person of average education and training in the field. A structure

or function is equivalent if such an ordinary skilled person would consider the differences between the accused structure or function and the structure or function in the patent to be insubstantial.

One way of determining whether the structure of the accused product is equivalent to the structure disclosed in the specification is to determine whether or not persons of ordinary skill in the field of the invention believe that the structure disclosed in the specification and the structure of the accused product are interchangeable. Another way is to determine whether or not the accused structure performs substantially the same function, in substantially the same way, to achieve substantially the same result.

Equivalency is determined as of the issuance of the patent. In this case, Medtronic asserts that BrainLAB`s infringe the means-plus-function limitations of Claim 1 of the Heilbrun ‘101 patent and Claim 1 of the Heilbrun ‘318 patent. The Heilbrun ‘101 patent issued on February 14, 1995 and the Heilbrun ‘318 patent issued on February 18, 1997. Thus, in deciding whether or not a structure in one of BrainLAB’s products is included in the means-plus-function limitation of Claim 1 of the Heilbrun ‘101 patent, you must first decide whether or not the technology used in the structure of that particular BrainLAB product that relates to the means-plus-function limitation was known as of February 14, 1995.

Similarly, in deciding whether or not a structure in one of BrainLAB’s products is included in the means-plus-function limitation of Claim 1 of the Heilbrun ‘318 patent, you must first decide whether or not the technology used in the structure of that particular BrainLAB product that relates to the means-plus-function limitation was

known as of February 18, 1997. Under the patent laws, a structure that incorporates technology that was developed after the issuance of the patent cannot be literally included in the means-plus-function limitations of that patent.

Thus, if you find that the technology incorporated in the structure of a particular BrainLAB product was developed after the Heilbrun '101 and Heilbrun '318 patents issued, then you can only consider whether or not the means-plus-function limitations of the Heilbrun '101 and Heilbrun '318 patents claims are included in that particular BrainLAB product under the doctrine of equivalents.

Let's go back to our example of the claim reciting three limitations -- first, a tabletop, second, legs and third, a means for securing the legs to the tabletop. The third limitation is the means-plus-function portion of the claim. The patent in our example discloses glue to secure the legs to the tabletop. Let's assume that the accused device uses nails and that the nail was invented after the issuance of the patent of the table. As a result, the question of whether the use of nails infringes the patent must be considered under the doctrine of equivalents.

Glue and nails both perform the claimed function of securing the legs to the tabletop. The fact that nails and glue are different does not mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as whether the glue is important to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, and whether in the patent or prosecution history the two are referred to as equivalent.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 8.6.

**AUTHORITIES**

35 U.S.C. § 112 ¶ 6 (1984); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-10 (Fed. Cir. 1998); *B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424-25 (Fed. Cir. 1997).

# JURY INSTRUCTION NO. 29

**DETERMINATION OF INFRINGEMENT**

Taking each claim of the patents separately, if you find that Medtronic has proved that it is more probable than not that each and every limitation of the claim is present, either literally or under the doctrine of equivalents, in one or more of BrainLAB's accused products or processes, then you must find that BrainLAB infringes that claim.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 8.7.

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 56 of 111

# JURY INSTRUCTION NO. 30 [DELETED]

**INFRINGEMENT OF DEPENDENT CLAIMS**

My instructions on infringement so far have related to independent claims. The Bucholz '454 patent and the Heilbrun '101 patent also contain dependent claims. Specifically, claim 16 of the Bucholz '454 patent and claim 7 of the Heilbrun '101 patent are dependent claims. A dependent claim includes each of the limitations of the independent claim to which it refers, plus additional elements.

If you find that independent claim 14 of the Bucholz '454 patent has been infringed, you must separately determine whether dependent claim 16 has also been infringed. If you find that independent claim 1 of the Heilbrun '101 patent has been infringed, you must separately determine whether dependent claim 7 has also been infringed.

If you find that the independent claims are not infringed, then you must also find that the dependent claims are not infringed.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 8.10.

**AUTHORITIES**

*Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Finnigan Corp. v. United States Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989).

# JURY INSTRUCTION NO. 31

**INFRINGEMENT AND IMPROVEMENTS TO PATENTED INVENTION**

BrainLAB has presented evidence that its products or processes accused of infringement represent an improvement of the invention described in the claims of the Bucholz '454 patent, the Roberts '056 patent, Heilbrun '101 patent, and the Heilbrun '318 patent. Proof of this fact does not necessarily mean that the accused product or process does not infringe Medtronic's patent claims. The tests for infringement remain as I have instructed you. As long as you find that BrainLAB's accused products include all of the limitations of at least one of the claims of the Heilbrun '101 patent or the Heilbrun '318 patent, either literally or under the doctrine of equivalents, or that BrainLAB's accused products or processes include all of the limitations of at least of the claims of the Bucholz '454 patent or the Roberts '056 patent under the doctrine of equivalents, then you must find that BrainLAB is liable for patent infringement, despite BrainLAB's improvements.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 8.11.

**AUTHORITIES**

*Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1191-92 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1582 (Fed. Cir. 1996); *Stiftung v. Renishaw, PLC*, 945 F.2d 1173, 1179 (Fed. Cir. 1991); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989); *Atlas Powder Co. v. E. I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1580-81 (Fed. Cir. 1984).

# JURY INSTRUCTION NO. 32

**INDIRECT INFRINGEMENT**

As I have told you, in addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. The act of encouraging or inducing others to infringe a patent is called "inducing infringement," which is also known as indirect infringement.

There can be no indirect infringement unless someone is directly infringing the patent. Thus, in order to prove that BrainLAB is inducing another person to infringe [], Medtronic must prove that it is more probable than not that the other person is directly infringing at least one claim of the patent.

In this case, Medtronic accuses BrainLAB of inducing the infringement of claim 14 of the Bucholz '454 Patent, claim 1 of the Roberts '056 Patent, claim 1 of the Heilbrun '101 Patent, and claim 1 of the Heilbrun '318 Patent. Medtronic must prove that it is more probable than not that BrainLAB has induced the infringement of one or more of these claims.

Medtronic also accuses BrainLAB of contributory infringement of claims 14 and 16 of the Bucholz '454 Patent, claim 1 of the Roberts '056 Patent, claims 1 and 7 of the Heilbrun '101 Patent, and claim 1 of the Heilbrun '318 Patent. Medtronic must prove that it is more probable than not that BrainLAB has contributed to the infringement of these claims.

**SOURCE**: Federal Circuit Bar Association Model Patent Jury Instruction 8.12 (as modified).

**AUTHORITIES**

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 340-41 (1961); *Arthur A. Collins, Inc. v. N. Telcom Ltd.*, 216 F.3d 1042, 1049 (Fed. Cir. 2000); *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 884-86 (Fed. Cir. 1986).

# JURY INSTRUCTION NO. 33 [REVISED]

**INDUCING PATENT INFRINGEMENT**

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which, as I've just told you, can occur unintentionally. In order to prove inducement, the patent owner must prove that it is more probable than not that the accused inducer knew of the patent and encouraged or instructed another person to use a product or process in a manner that infringes the patent. Medtronic can prove this with circumstantial evidence, which I explained earlier. The patent owner must also prove that it is more probable than not that the other person infringed the patent. A person can be an inducer even if he or she thought that what he or she was encouraging or instructing the other person to do was not an infringement.

Medtronic asserts that BrainLAB induced patent infringement. Medtronic must prove four things by the more probable than not standard:

First, BrainLAB encouraged or instructed another person how to use a product or process in a manner that you, the jury, find infringes claim 14 of the Bucholz '454 Patent, claim 1 of the Roberts '056 Patent, claim 1 of the Heilbrun '101 Patent, and/or claim 1 of the Heilbrun '318 Patent.

Second, BrainLAB knew of the Bucholz '454 Patent, the Roberts '056 Patent, the Heilbrun '101 Patent, and/or the Heilbrun '318 Patent.

Third, BrainLAB knew or should have known that its encouragement or instructions would likely result in the other person doing that which you find to be an

infringement of the Bucholz '454 Patent, the Roberts '056 Patent, the Heilbrun '101 Patent, and/or the Heilbrun '318 Patent.

Fourth, the other person infringed the Bucholz '454 Patent, the Roberts '056 Patent, the Heilbrun '101 Patent, and/or the Heilbrun '318 Patent.

If, and only if, you are persuaded of each of these four things may you find that BrainLAB induced patent infringement.

BrainLAB has stipulated for all purposes in this litigation that where it has sold to a customer in the United States products and/or systems accused of infringement in this litigation by the opposing party, that such products and/or systems have been installed, set-up and are used by BrainLAB's customers and end users in the manner recommended or advised in BrainLAB's product literature pertaining to the products and systems sold to that customer, including, without limitation, all applicable manuals, instructions for use, user's guides, operational guides, service and maintenance guides, or as used in its demonstrations to customers and videotaped demonstrations to Medtronic.

You can determine direct infringement by someone other than BrainLAB using circumstantial evidence. If you find that Medtronic has proven that it is more likely than not that the Products at Issue can be used in a way that infringes the Asserted Claims, you may determine that users of BrainLAB's accused products use those produce in an infringing manner based on circumstantial evidence.

**SOURCE**: Federal Circuit Bar Association Model Patent Jury Instruction 8.12.

**AUTHORITIES**

35 U.S.C. § 271(b) (1984); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 2005 U.S. App. LEXIS 17956, at *27-*28 (Fed. Cir. Aug. 22, 2005) ("the series of e-mails between SUMCO and Samsung Austin provide sufficient circumstantial evidence for a reasonable jury to conclude that SUMCO was not only aware of the potentially infringing activities in the United States by Samsung Austin, but also that SUMCO intended to encourage those activities"); *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1261 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1311-12 (Fed. Cir. 1998); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 876 n.4 (Fed. Cir. 1995); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774-76 (Fed. Cir. 1993); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553-54 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468-69 (Fed. Cir. 1990); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986), *cert. denied* 479 U.S. 1030, (1987) (finding circumstantial evidence of product sales and dissemination of an instruction sheet to be sufficient to support finding of inducing infringement).

# JURY INSTRUCTION NO. 34 [REVISED]

**CONTRIBUTORY INFRINGEMENT**

Medtronic also alleges that BrainLAB has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by BrainLAB, someone other than BrainLAB must directly infringe a claim of the Medtronic patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone other than BrainLAB has directly infringed the Medtronic patents, then contributory infringement by BrainLAB exists if:

1. BrainLAB supplied an important component of the infringing part of the product;

2. The component is not a common component suitable for a non-infringing use; and

3. BrainLAB supplied the component with the knowledge of the Medtronic patent, and knowledge that the component was especially made or adapted for use in an infringing manner.

You can determine direct infringement by someone other than BrainLAB using circumstantial evidence. If you find that Medtronic has proven that it is more likely than not that the Products at Issue can be used in a way that infringes the Asserted Claims, you may determine that users of BrainLAB's accused products use those produce in an infringing manner based on circumstantial evidence.

**AUTHORITIES**

35 U.S.C. 271(c); *Aro Mfg. Co. Convertible Top Replacement Co.*, 377 U.S. 476 (1964); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986), *cert. denied* 479 U.S. 1030, (1987) (using circumstantial evidence to find infringement by another because "[i]t is hornbook law that direct evidence of a fact is not necessary. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.") (quotation omitted); *Lucas Aerospace v. Unison Indus., L.P.*, 899 F. Supp. 1268, 1286 (D. Del. 1995);1286 ("Proof of contributory infringement may be based on circumstantial evidence.").

# JURY INSTRUCTION NO. 35

**WILLFUL INFRINGEMENT**

Medtronic also contends that BrainLAB has willfully infringed the Bucholz '454 patent, the Roberts '056 patent, the Heilbrun '101 patent, and the Heilbrun '318 patent. If you find on the basis of the evidence and the law as I have explained it, that BrainLAB directly or indirectly infringes at least one claim of the Bucholz '454 patent, the Roberts '056 patent, the Heilbrun '101 patent, or the Heilbrun '318 patent, you must then decide whether or not BrainLAB's infringement was willful.

When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care and investigate whether or not his or her activities or proposed activities infringe any valid, enforceable claim of the patent. If that person did not do this and is found to have infringed the patent claims, then the infringement was willful.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which Medtronic is entitled. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages. If you decide that BrainLAB willfully infringed the one or more of the claims of the Bucholz '454 Patent, the Roberts '056 Patent, the Heilbrun '101 Patent, and/or the Heilbrun '318 Patent, then it is my job to decide whether or not to award increased damages to Medtronic.

Although, as I explained before, Medtronic must prove infringement by the more probable than not standard, the burden of proving that the infringement was willful is the highly probable standard that requires clear and convincing evidence.

To establish willful infringement, Medtronic must prove two things by the highly probable standard. First, Medtronic must prove that BrainLAB was aware of the Bucholz '454 Patent, the Roberts '056 Patent, the Heilbrun '101 Patent, and/or the Heilbrun '318 Patent. Second, Medtronic must prove that BrainLAB proceeded with the activities that are accused of infringement without a good faith belief that the infringed patent or patents of which it was aware were either invalid, not infringed, or both.

In determining whether or not BrainLAB acted in good faith, you should consider all of the circumstances, including whether or not BrainLAB obtained and followed the <u>independent</u> advice of a competent lawyer. Although the absence of a lawyer's opinion does not require you to find willfulness, the obtaining and following of a lawyer's advice may be evidence that infringement was not willful.

In evaluating BrainLAB's reliance on the advice of a lawyer, you should consider when BrainLAB obtained the advice, the quality of the information BrainLAB provided to the lawyer, the competence of the lawyer's opinion, and whether or not BrainLAB relied upon the advice. Advice is competent if it was based upon a reasonable examination of the facts and law relating to validity and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers.

Another factor you should consider in determining willfulness is whether or not, in designing the products or processes accused of infringement, BrainLAB copied the disclosures of the Bucholz '454 Patent, the Roberts '056 Patent, the Heilbrun '101 Patent, and/or the Heilbrun '318 Patent, or whether or not BrainLAB instead tried to

"design around" the patent by designing products or processes that BrainLAB believed did not infringe the patent claims. Evidence of copying a patent is evidence of willful infringement. On the other hand, evidence that BrainLAB attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that infringement was not willful.

The fact that you may have determined that BrainLAB was wrong and that the Bucholz '454 Patent, the Roberts '056 Patent, the Heilbrun '101 Patent, and/or the Heilbrun '318 Patent is infringed does not mean that BrainLAB's infringement was willful. All that is required to avoid a finding of willful infringement is that BrainLAB had a good faith belief that it did not infringe or that the patent was invalid, and that BrainLAB belief was reasonable under all of the circumstances.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 9 (as modified).

**AUTHORITIES**

35 U.S.C. § 284 (Supp. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999); *John's Hopkins University v. Cellpro*, 152 F.3d 1342, 1363 (Fed. Cir. 1998); *Comark Comm, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *SRI Int'l, Inc. v. Advanced Tech. Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259-60 (Fed. Cir. 1997); *Nat'l Presto Indus. v. W. Bend Co.*, 76 F.3d 1185, 1192-93 (Fed. Cir. 1996); *Stryker Corp. v. Intermedics Orthopedics Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995); *Amsted*

*Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 180 (Fed. Cir. 1994); *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993); *Minnesota Mining & Mfg. v. Johnson and Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-30 (Fed. Cir. 1992); *Studiengesellschaft Kohle v. Dart Indus., Inc.*, 862 F.2d 1564, 1579 (Fed. Cir. 1988); *Underwater Devices, Inc. v. Morrison-Knudsen*, Co., 717 F.2d 1380, 1390 (Fed. Cir. 1983) (upholding a finding of willful infringement where the infringer relied upon on the advice of its own in-house counsel and was not justified in believing its in-house attorney was "capable of rendering an independent and competent opinion"); *see also, Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1346 (Fed. Cir. 2004) (noting "failure to obtain an independent legal opinion" as a factor to be weighed in willfulness assessment).

# JURY INSTRUCTION NO. 36 [REVISED]

**VALIDITY IN GENERAL**

Patents are presumed to be valid. Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss BrainLAB's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

BrainLAB has challenged the validity of the claims in the Bucholz '454 patent, the Heilbrun '101 patent, and the Heilbrun '318 patent on a number of grounds. The patents at issue in this case are presumed to be valid. This presumption of validity applies to all grounds upon which validity may be challenged. For this reason, BrainLAB must prove that a patent claim is invalid by the highly probable standard, with clear and convincing evidence.

I will now explain to you each of BrainLAB's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

**SOURCE**: Federal Circuit Bar Association Model Jury Instruction No. 10.1 (as modified).

**AUTHORITIES**

35 U.S.C. § 282; *Bd. of Regents v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005); *Nystrom v. Trex Co.*, 374 F.3d 1105, 1117 (Fed. Cir. 2004); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1308 (Fed. Cir. 2004); *Checkpoint Systems v. USITC*, 54 F3d 756, 761 (Fed. Cir. 1995); *Morton Int'l v. Cardinal Chem. Co.*, 5 F.3d 1464, 1471-2 (Fed. Cir. 1993); *Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *Panduit Corp. v. Dennison*, 810 F.2d 1561, 1569-70 (Fed. Cir. 1987); *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983).

# JURY INSTRUCTION NO. 37 [REVISED]

**THE PRIOR ART**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art".

BrainLAB is relying on two items of prior art, U.S. Patent Number 5,662,111, which I will refer to as the Cosman '111 Patent, and U.S. Patent Number 5,197,476, which I will refer to as the Nowacki '476 Patent. BrainLAB contends that the Cosman '111 Patent is prior art to the Heilbrun '101 and '318 patents. Medtronic disputes that the Cosman '111 Patent is prior art to the Heilbrun '101 and '318 patents. As a result, BrainLAB must prove by the highly probable standard, with clear and convincing evidence, that the Cosman '111 patent is prior art. In order to do so, BrainLAB must prove that the Cosman '111 Patent issued from a patent application filed in the United States before Dr. Heilbrun invented the inventions disclosed in the Heilbrun '101 and '318 patents.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 10.6 (as modified).

**AUTHORITIES**

*Nystrom v. Trex Co.*, 374 F.3d 1105, 1117 (Fed. Cir. 2004)

# JURY INSTRUCTION NO. 38 [REVISED]

**PRIOR ART -- DATE OF INVENTION**

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention".

I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice". An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice". In this case, that date is April 21, 1992 <u>for both the Heilbrun '101 and '318 patents</u>. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There are, however, two circumstances under which art dated before the application filing date is not prior art. The first occurs when the inventor on the patent reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the prior art and exercised reasonable diligence from just before the date of the art up to

the date of the inventor's reduction to practice. In that case, art dated after the conception date is not prior art to the patent claims.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.

I will now describe the specific requirements for the prior art categories relied on by BrainLAB in this case.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 10.6.1.

**AUTHORITIES**

*Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Genentech Inc. v. Chiron Corp.*, 220 F.3d 1345, 1351 (Fed. Cir. 2000); *Bruning v. Hirose*, 161 F.3d 681, 684-85 (Fed. Cir. 1998); *Cooper v. Goldfarb*, 154 F.3d 1321, 1326-31 (Fed. Cir. 1998); *Hyatt v. Boone*, 146 F.3d 1348, 1352-55 (Fed. Cir. 1998); *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 592-93 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577-79 (Fed. Cir. 1996); *Burroughs Wellcome Co. v. Barr Labs.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994); *Griffith v. Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987); *Bey v. Kollonitsch*, 806 F.2d 1024, 1026 (Fed. Cir. 1986); *Morgan v. Hirsch*, 728 F.2d 1449, 1452 (Fed. Cir. 1984).

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 74 of 111

# JURY INSTRUCTION NO. 39 [REVISED]

**PRIOR ART – PRIOR PATENTS AND PATENT APPLICATIONS**

An issued patent may be prior art to a patent claim under a number of different circumstances. First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued either before the inventor made the claimed invention, or more than one year before the application for the patent was filed.

If a patent issued anywhere in the world more than one year before the application for the patent was filed, then that publication may be prior art, regardless of the date of invention of the claimed invention. The date of invention is irrelevant to this category of prior art.

A U.S. patent or published U.S. patent application may be prior art to a patent claim, even if the patent issued or the patent application was published after the date of invention of a claimed invention. This occurs when the patent application for the U.S. patent was filed by another person before the inventor made the claimed invention.

In this case, BrainLAB relies on the Cosman '111 and Nowacki '476 patents as prior art patent to the Heilbrun '101 and '318 patents. Medtronic disputes that the Cosman '111 patent is prior art to the Heilbrun '101 and '318 patents.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 10.6.9.

**AUTHORITIES**

35 U.S.C. § 102(a), (b), and (e) (1984 & Supp. 2001); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Chu*, 66 F.3d 292, 296-97 (Fed. Cir. 1995); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Baxter Int'l, Inc.*

*v. Cobe Labs., Inc.*, 88 F.3d 1054, 1062 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452 (Fed. Cir. 1991).

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 76 of 111

# JURY INSTRUCTION NO. 40 [REVISED]

**ANTICIPATION/LACK OF NOVELTY**

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by the highly probable standard, with clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art,

and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case. The mere possibility that something might be present in the prior art cannot establish anticipation by inherency.

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person. Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.

In this case, BrainLAB contends that claim 1 of the Heilbrun '101 patent and claim 1 of the Heilbrun '318 patent are invalid because they are anticipated by either the Cosman '111 or Nowacki '476 patents. If you find that BrainLAB has proved that it is highly probable, with clear and convincing evidence, that claim 1 of the Heilbrun '101 patent or claim 1 of the Heilbrun '318 patent are anticipated, then you must find that the anticipated claims are invalid.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 10.8 (as modified).

**AUTHORITIES**

*Bd. of Regents v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005); *Nystrom v. Trex Co.*, 374 F.3d 1105, 1117 (Fed. Cir. 2004); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1308 (Fed. Cir. 2004); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs. v. Geneva Pharms.*, Inc., 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm'n*, 180 F.3d

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 78 of 111

1354, 1364 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998); *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 988 (1995), *Checkpoint Systems v. USITC*, 54 F3d 756, 761 (Fed. Cir. 1995); *Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1052 (Fed. Cir. 1994), for *Panduit Corp. v. Dennison*, 810 F.2d 1561, 1569-70 (Fed. Cir. 1987); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983).

## JURY INSTRUCTION NO. 41 [REVISED]

**OBVIOUSNESS**

As I mentioned earlier, an inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Unlike anticipation, obviousness may be shown under the highly probable standard, with clear and convincing evidence, by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? There must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims in the public prior art, in the problem addressed by the invention, or in the knowledge of one of ordinary skill in the art. If the answer to that question is yes, then the patent claims are invalid. BrainLAB has the burden of proving by the highly probable standard that claim 1 of the Heilbrun '101 patent and claim 1 of the Heilbrun '318 patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior

art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made. As I mentioned earlier, there must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims in the public prior art, in the problem addressed by the invention, or in the knowledge of one of ordinary skill in the art

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

Against this background, you must decide whether or not the inventions covered by the claims of the Heilbrun '101 patent and the Heilbrun '318 patent would have been obvious.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 10.9 (as modified).

**AUTHORITIES**

*NTP, Inc. v. Research in Motion, Ltd.*, 2005 U.S. App. LEXIS 15920, at *115 (Fed. Cir. Aug. 2, 2005); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005); *In re Rouffet*, 149 F.3d 1350, 1356 (Fed. Cir. 1998); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Bd. of Regents v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005); *Nystrom v. Trex Co.*, 374 F.3d 1105, 1117 (Fed. Cir. 2004); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1308 (Fed. Cir. 2004); *LNP Eng'g Plastics, Inc. v. Miller Waste Mills*, Inc., 275 F.3d 1347, 1359 (2001); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-68 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998- 1000 (Fed. Cir. 1999); *In re Deuel*, 51 F.3d 1552, 1557-60 (Fed. Cir. 1995); *Checkpoint Systems v. USITC*, 54 F3d 756, 761 (Fed. Cir. 1995); *Panduit Corp. v. Dennison*, 810 F.2d 1561, 1569-70 (Fed. Cir. 1987); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1574-75 (Fed. Cir. 1986).

# JURY INSTRUCTION NO. 42 [REVISED]

**THE SCOPE AND CONTENT OF THE PRIOR ART**

If you determine that the Cosman '111 patent is prior art, you must determine the scope and content of the prior art, which means that you should determine what is disclosed in the prior art relied on by BrainLAB. You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 10.9.1 (as modified).

**AUTHORITIES**

*Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet,* 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab. v. Toshiba Corp.*, 993 F.2d 858, 863 (Fed. Cir. 1993); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991) .

# JURY INSTRUCTION NO. 43 [REVISED]

## DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART

If BrainLAB establishes that the Cosman '111 patent is prior art, you must examine differences between the invention covered by the patent claims and the prior art. In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims in the public prior art, in the problem addressed by the invention, or in the knowledge of one of ordinary skill in the art. You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims. The question to be answered is: Would someone reading the prior art be discouraged from following the path taken by the inventor?

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 10.9.2 (as modified).

**AUTHORITIES**

*Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v.*

*Danbury Pharmacal*, Inc., 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-1000 (Fed. Cir. 1999); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *In re Rouffet*, 149 F.3d 1350, 1356 (Fed. Cir. 1998); *Nyko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 717 (Fed. Cir. 1991).

# JURY INSTRUCTION NO. 44

**LEVEL OF ORDINARY SKILL**

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 10.9.3.

**AUTHORITIES**

*Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-99 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

# JURY INSTRUCTION NO. 45

**OBJECTIVE INDICATIONS CONCERNING OBVIOUSNESS**

You also must consider what are referred to as objective indications of non-obviousness. Some of these indications of non-obviousness are:

1. Commercial success of products covered by the patent claims or made by a process covered by the patent claims.
2. A long-felt need for the invention.
3. Failed attempts by others to make the invention.
4. Copying of the invention by others in the field.
5. Unexpected results achieved by the invention.
6. Praise of the invention by the infringer or others in the field.
7. The taking of licenses under the patent by others.
8. Expressions of surprise by experts and those skilled in the art at the making of the invention.
9. The patentee proceeded contrary to the accepted wisdom of the prior art.

The presence of any of these objective indications may suggest that the invention was not obvious. These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims. If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 10.9.4.

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 87 of 111

**AUTHORITIES**

*Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

## JURY INSTRUCTION NO. 46 [REVISED]

**DETERMINATION OF OBVIOUSNESS**

BrainLAB contends that the invention claimed in claim 1 of the Heilbrun '101 patent and claim 1 of the Heilbrun '318 patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of the Cosman '111 patent, or the Cosman '111 patent combined with the Nowacki '476 patent. If you find that BrainLAB has proved obviousness, including an express and specific motivation to combine, by the highly probable standard, with clear and convincing evidence, then you must find that the claims are invalid for obviousness.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 10.9.5 (as modified).

**AUTHORITIES**

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005); *Bd. of Regents v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005); *Nystrom v. Trex Co.*, 374 F.3d 1105, 1117 (Fed. Cir. 2004); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1308 (Fed. Cir. 2004); *In re Rouffet*, 149 F.3d 1350, 1356 (Fed. Cir. 1998); *Checkpoint Systems v. USITC*, 54 F3d 756, 761 (Fed. Cir. 1995); *Panduit Corp. v. Dennison*, 810 F.2d 1561, 1569-70 (Fed. Cir. 1987).

# JURY INSTRUCTION NO. 47

**FAILURE TO NAME CO-INVENTOR**

BrainLAB claims that the Bucholz '454 patent is invalid because Waldean Schulz was a co-inventor of the invention claimed in the Bucholz '454 patent. To prove that the Bucholz '454 patent is invalid, BrainLAB must establish by clear and convincing evidence that Mr. Schulz was a co-inventor of the invention claimed in the Bucholz '454 patent, and that Mr. Schulz acted with deceptive intent in not being listed on the patent application as a co-inventor.

The patent laws require an applicant for a patent to list all of the inventors of the invention. A person must be listed as a co-inventor of the invention if he or she (1) contributed in some significant manner to the conception or reduction to practice of the invention, (2) made a contribution to the claimed invention that is significant in quality, when that contribution is measured against the dimension of the full invention, and (3) did more than merely explain to the real inventor well-known concepts and/or the current state of the art.

An inventor may adopt materials from another so long as the inventor maintains sole intellectual domination of the work making the invention down to the successful testing, selecting or rejecting.

If you conclude that, in light of the factors listed above, Mr. Schulz made a significant contribution to the invention claimed in the Bucholz '454 Patent, you should find that Mr. Schulz is a co-inventor of that invention. If you further conclude that Mr.

Schulz acted with deceptive intent in not being listed as an inventor of the ‘454 patent, you should find that the ‘454 patent is invalid.

**SOURCE:** *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998). M.P.E.P. 2138.04 “Conception” citing *Morse v. Porter*, 155 USPQ 280, 283 (Bd. Pat. Inter. 1965); *Staehelin v. Secher*, 24 USPQ2d 1513, 1522 (Bd. Pat. Inter. 1992).

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 91 of 111

# JURY INSTRUCTION NO. 48

**CORROBORATION**

To establish co-inventorship, oral testimony must be corroborated by some other evidence. Corroborating evidence must rise to the level of clear and convincing evidence, and comes preferably in the form of tangible evidence created contemporaneously at the time of the alleged events. When corroboration is in the form of oral testimony, in weighing the evidence you may consider whether the witness has an interest or a stake in the outcome, a bias in favor of the BrainLAB, is prejudiced against Medtronic, or has some other interest that would cause him to exaggerate his contribution to the invention.

**SOURCE:** *Gemstar-TV Guide Intern., Inc. v. International Trade Com'n*, 383 F.3d 1352, 1382 (Fed. Cir. 2004); *Juicy Whip v. Orange Bang, Inc.*, 292 F.3d 728, 737-43 (Fed. Cir. 2002); *Finnigan Corp v. Int'l Trade Comm.*, 180 F.3d 1354, 1367-68 (Fed. Cir. 1999); *Woodland Trust v. Flower Tree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998); *Sandt Tech. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001).

# JURY INSTRUCTION NO. 49

**INEQUITABLE CONDUCT**

**NO INEQUITABLE CONDUCT ISSUE CAN BE SUBMITTED TO THE JURY. INEQUITABLE CONDUCT IS RESERVED FOR THE COURT.**

**AUTHORITIES**

*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed. Cir. 2000); *Paragon Podiatry Lab. Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190, (Fed. Cir. 1993); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987).

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 93 of 111

# JURY INSTRUCTION NO. 50

**DAMAGES**

I have now instructed you as to the law governing Medtronic's claims of patent infringement and defendants' claims of invalidity. If you find that BrainLAB has infringed a valid claim of any of the patents in suit, then you must determine what damages BrainLAB must pay to Medtronic for that infringement. If, on the other hand, you find that BrainLAB has not infringed a valid, enforceable claim of any of the patents in suit, then Medtronic is not entitled to any damages, and you should not make any findings about damages.

The fact that I am instructing you about damages does not mean that Medtronic is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that defendants infringed at least one valid, enforceable claim of any of the patents in suit.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.

# JURY INSTRUCTION NO. 51

**COMPENSATORY PATENT DAMAGES IN GENERAL**

If you find that any claim of any of the patents in suit is both valid and infringed, then Medtronic is entitled to damages adequate to compensate for the infringement. These damages may not be less than what a reasonable royalty would be for the use made of the invention by BrainLAB. In determining damages, you must decide how much financial harm Medtronic has suffered by reason of the infringement. You must decide the amount of money that Medtronic would have made had BrainLAB not infringed.

Damages are only to compensate Medtronic, to put Medtronic into the position it would have been in if BrainLAB had not infringed. You may not add anything to the amount of damages to punish BrainLAB, or to set an example.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.1.

**AUTHORITIES**

35 U.S.C. § 284 (2001); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*).

# JURY INSTRUCTION NO. 52 [REVISED]

## NOTICE REQUIREMENT FOR PATENTS WITH PRODUCT CLAIMS

The date that Medtronic first gave notice to Defendants of their claim of patent infringement is the date at which patent damages begin to be calculated. For the Heilbrun '101 patent that date has been agreed to by the parties to be February 1, 1999, which is the date that patent was added to this lawsuit. For the Heilbrun '318 patent that date has been agreed to by the parties to be April 10, 2000. For the Roberts '056 patent that date has been agreed to by the parties to be April 10, 2000. For the Bucholz '454 patent that date has been agreed to by the parties to be August 1, 1995.

**AUTHORITIES**

35 U.S.C. 287(a); Amsted Industries, Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 30 USPQ2d 1462 (Fed. Cir. 1994); Devices for Medicine, Inc. v. Boehl, 822 F.2d 1062, 3 USPQ2d 1288 (Fed. Cir. 1987).

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 96 of 111

# JURY INSTRUCTION NO. 53

## TWO TYPES OF DAMAGES -- LOST PROFITS AND REASONABLE ROYALTY

There are two types of damages for patent infringement.

The first type of patent damages is lost profits. Briefly, lost profits damages compensate the patent owner for the additional profits that they would have made if the accused infringer had not infringed. You may hear this referred to as the "but for" test. I will discuss lost profits in more detail shortly.

The second type of patent damages is called reasonable royalty. I will also discuss reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.2.

## JURY INSTRUCTION NO. 54 [REVISED]

**LOST PROFITS, TYPES AND BURDEN OF PROOF**

I will first instruct you about lost profit damages. Simply stated, lost profit damages are the profits Medtronic lost because of the infringement. They are not the profits BrainLAB made. Medtronic says that it lost profits because BrainLAB's infringement took away sales that Medtronic would have made. This is called lost profits due to lost sales.

Medtronic also says that it lost profits because of price erosion. In other words, Medtronic says that it had to lower its prices in order to compete with BrainLAB's infringement. Medtronic says that because it had to lower its prices, it made less profits on the sales it made than it would have made had it not had to compete with BrainLAB. This is called lost profits due to price erosion.

Medtronic has the burden to show that it was more probable than not that it would have made additional profits if BrainLAB had not infringed.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.3.

**AUTHORITIES**

*Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley, Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995)(*en banc*); *BIC Leisure Products, Inc. v. Windsurfing Int'l.*, 1 F.3d 1214 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs.*, Corp., 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); *Water Technologies Corp. v.*

*Calco, Ltd.*, 850 F.2d 660, 672 (Fed. Cir. 1988); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

# JURY INSTRUCTION NO. 55

**LOST SALES**

Lost sales are those sales Medtronic lost because of the infringement.

To prove that it lost sales, Medtronic must prove that it was more probable than not that it would have made additional sales if BrainLAB had not infringed.

Medtronic may receive damages for lost sales only on those products that compete with BrainLAB's products that you find to infringe, and that are functionally part of the competing product. Medtronic may not receive lost profit damages for other products or services that might be sold along with the competing product for convenience or business advantage, but that are not functionally part of the competing product. It is not relevant whether Medtronic's competing products are themselves covered by any infringed claims.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.3.1 (as modified).

**AUTHORITIES**

*Grain Processing Corp. v. American Maize-Prods. Comp.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952-53 (Fed. Cir. 1995) ("[t]o adequately compensate for infringement of the right to exclude, as section 284 requires, 'damages' includes lost profits on competing products not covered by the infringed claims"); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (*en banc*) (there is "no basis for [a] conclusion that the lost sales must be of products covered by the infringed

patent”); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 101 of 111

# JURY INSTRUCTION NO. 56

**MANUFACTURING AND MARKETING ABILITY**

In deciding whether Medtronic lost sales, you should consider whether or not Medtronic has proved that it had the manufacturing capacity and the marketing capability to make the sales it says it lost.

Medtronic must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement.

Medtronic also must prove that it had the capability to market and sell the additional products.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.3.2.

**AUTHORITIES**

*Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Fonor Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Stryker Corp. v. IntermedicsOrthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994).

# JURY INSTRUCTION NO. 57

**ABSENCE OF ACCEPTABLE NON-INFRINGING SUBSTITUTES**

In determining whether Medtronic lost sales due to infringement, you must consider whether or not, if BrainLAB's infringing products or processes were not available, some or all of the people who bought from BrainLAB would have bought a different, non-infringing product from BrainLAB or from somebody else, rather than buy from Medtronic.

In determining whether Medtronic lost sales due to infringement, Medtronic can provide evidence of its market share of similar products as those BrainLab products accused of infringement. Under the "market share" test, a patent owner may recover lost profits, even though acceptable non-infringing substitutes exist, based on the percentage of the accused infringer's sales equal the patent owner's market share for the patented invention.

In deciding whether or not people who bought from BrainLAB would have bought a non-infringing product, you should consider whether or not there was such a demand for the patented aspects of the infringing product that purchasers would not have bought a non-infringing product.

**SOURCES:** Federal Circuit Bar Association Model Jury Instruction No. 12.3.3 (as modified by ABA Model Jury Instructions for Patent Litigation (Notes)).

**AUTHORITIES**

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001), (*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American-Maize Prod.*, 185 F.3d

Case 1:98-cv-01072-RPM Document 459 Filed 09/23/2005 Page 103 of 111

1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1578-79 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc*., 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (*en banc*); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc*., 926 F.2d 1136, 1142 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs., Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc*., 883 F.2d 1573, 1576-78 (Fed. Cir. 1989) (holding that the existence of non-infringing alternatives did not prohibit patentee from obtaining lost profits for the sales it would have reasonably made based on its market share).

# JURY INSTRUCTION NO. 58 [REVISED]

**LOST PROFITS DUE TO PRICE EROSION**

Medtronic says that they also lost profits because it had to lower its prices because of BrainLAB's infringement. Medtronic must prove that it lowered its prices because of the infringement, and not for some other reason.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.3.4.

**AUTHORITIES**

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357-60 (Fed. Cir. 2001); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324-25 (Fed. Cir. 2000); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996).

# JURY INSTRUCTION NO. 59 [REVISED]

**AMOUNT OF LOST PROFITS**

If Medtronic has proved that it lost profits due to infringement by BrainLAB, then you are to find the amount of profits that Medtronic lost. Medtronic must prove the amount of its lost profits to a reasonable probability.

The amount of lost profits damages should not include amounts that are merely speculation. However, if the reason that Medtronic has difficulty proving the amount of their lost profits is because BrainLAB did not keep records or destroyed records, such as records of their sales, then you should resolve doubts as to the amount against BrainLAB.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.3.5.

**AUTHORITIES**

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1574-77 (Fed. Cir. 1997); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-32 (Fed. Cir. 1996).

# JURY INSTRUCTION NO. 60

**REASONABLE ROYALTY**

Medtronic also is asking for damages in the amount of a reasonable royalty as an alternative to lost profits. If you find that Medtronic has proved lost profits for all of BrainLAB's infringing sales, then the damages award to Medtronic should be those lost profits.

If you find that Medtronic has not proved that it should recover lost profits, or that it has only proved lost profits for some of BrainLAB's infringing sales, then for those infringing sales for which you do not award lost profits, you should determine the amount Medtronic has proved to be a reasonable royalty.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.3.6.

**AUTHORITIES**

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357-60 (Fed. Cir. 2001); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989).

# JURY INSTRUCTION NO. 61

**WHAT IS A REASONABLE ROYALTY?**

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the royalty that would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.

You are to decide what a reasonable royalty would be, based on circumstances as of the time just before BrainLAB began selling or using the patented invention. You should assume that BrainLAB and Medtronic knew at that time such things as the level of sales and profits that BrainLAB would make using the invention. You should also assume that Medtronic was willing to grant BrainLAB a license to sell the patented invention and that BrainLAB was willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that Medtronic and BrainLAB would consider in setting the amount defendants should pay.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. Whether Medtronic has established a royalty for the patented invention, for example, by granting other licenses at that royalty. You should remember, however, that an established royalty may have been set before the patent was determined to be valid and infringed in court and, therefore, may not be as much as it would be if both Medtronic and the party wanting to use the patent know it is valid and infringed.

2. Royalties paid by BrainLAB or by others for patents comparable to any of the patents in suit.

3. Whether or not Medtronic had a policy of licensing or not licensing the patent.

4. Whether or not Medtronic and BrainLAB are competitors.

5. Whether being able to use the patented invention helps in making sales of other products or services.

6. The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

7. The advantages and benefits of using the patented invention over products not claimed in any of the patents in suit.

8. The extent of BrainLAB's use of the patented invention and the value of that use to BrainLAB.

9. Whether or not there is a portion or percentage of the profit or selling price that is customarily paid in the field of image guided surgery products for use of patented inventions comparable to the inventions claimed in any of the patents in suit.

10. The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by BrainLAB.

11. Expert opinions as to what would be a reasonable royalty.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.3.7.

**AUTHORITIES**

*Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia- Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

# JURY INSTRUCTION NO. 62

**TOTAL DAMAGES**

After making your findings concerning lost profits damages and reasonable royalty damages, you should arrive at a total damages amount to award to Medtronic. This amount should include the amount of lost profits damages Medtronic has proved. It also should include the reasonable royalty damages for that portion of the infringement for which Medtronic did not prove lost profits damages.

**SOURCE:** Federal Circuit Bar Association Model Jury Instruction No. 12.3.8.

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2005 I served via electronic mail a copy of the foregoing on the following:

**ATTORNEYS FOR DEFENDANTS**
**BRAINLAB MEDIZINISHCHE COMPUTERSYSTEMS GMBH,**
**BRAINLAB, AG, BRAINLAB USA, INC., AND BRAINLAB INC.**

Marc D. Flink, Esq.
Baker & Hostetler, LLP
303 East Seventeenth Ave.,
Suite 1100
Denver, CO 80203-1264
Fax: 303-861-7805
mflink@bakerlaw.com

Thomas H. Shunk, Esq.
Baker & Hostetler, LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44115
Fax: 216-373-1534
tshunk@bakerlaw.com
kfleming@bakerlaw.com

Jay R. Campbell, Esq.
John Del Col, Esq.
Renner, Otto, Boisselle & Sklar, PLL
Nineteenth Floor
1621 Euclid Avenue
Cleveland, OH 44115
Fax: 216-621-6165
jcampbell@rennerotto.com
jdelcol@rennerotto.com

**ATTORNEYS FOR PLAINTIFF**
**ST. LOUIS UNIVERSITY:**

David W. Harlan, Esq.
Senniger Powers Leavitt & Roedel
One Metropolitan Square, Suite 1600
St. Louis, MO 63102
Fax: 314-231-4342
dharlan@senniger.com

**ATTORNEYS FOR PLAINTIFF**
**TRUSTEES OF DARTMOUTH**
**COLLEGE**

Curtis A. Vock, Esq.
LATHROP & GAGE, L.C.
4845 Pearl East Circle #300
Boulder, CO 80301
Fax: 720-931-3001
cvock@lathropgage.com

s/James E. Hartley
James E. Hartley

3454846_1.DOC